SIMONTON *v.* CITY OF PONTIAC.

1. MANDAMUS — MUNICIPAL CORPORATIONS — BONDHOLDERS' COMMITTEE MEMBERS — PARTIES.

Members of a bondholders' committee which has legal ownership of 60 per cent. of city's bonds maturing during the ensuing fiscal year may properly bring mandamus to enforce their rights thereunder by suit in their individual names, notwithstanding they are named as trustees in instrument vesting them with title (3 Comp. Laws 1929, § 14010).

2. MUNICIPAL CORPORATIONS — DEBT SERVICE — TAX LIMITATION.

City is bound to take care of its debt service pursuant to 1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931, notwithstanding the tax imposed may exceed two per cent. limitation placed thereon by home rule act, 1 Comp. Laws 1929, §§ 2230, 2241.

3. STATUTES — TITLE OF ACT — MUNICIPAL CORPORATIONS — DEBT SERVICE — HOME RULE ACT.

Title of Act No. 273, Pub. Acts 1925 (1 Comp. Laws 1929, § 2690 *et seq.*), regulating issuance and payment of municipal bonds and duties of municipal officers and State treasurer in connection therewith *held*, full and complete and not unconstitutional as failing to show it modifies tax limitation provisions of home rule act, 1 Comp. Laws 1929, §§ 2230, 2241.

4. MANDAMUS — WRIT OF GRACE.

Writ of mandamus is one of grace.

5. SAME — AMENDMENT OF MUNICIPAL APPROPRIATION ORDINANCE.

Bondholders' committee *held*, entitled to writ of mandamus to compel city officials to amend annual appropriation ordinance so as to include a sum sufficient to pay principal and interest payments maturing during fiscal year and levy taxes accordingly, although city has suffered from economic depression.

Mandamus by William A. Simonton and others, members of a bondholders' committee, to compel

City of Pontiac, a municipal corporation, Commission of the City of Pontiac, composed of Frank B. Ruf, Mayor, and others, and William R. Ransom and Leo J. Heenan, assessors, to spread on the tax-rolls, levy, and collect sufficient taxes to cover amount due bondholders and others on municipal bonds and for other relief. Submitted June 8, 1934. (Calendar No. 37,852.) Writ granted June 19, 1934.

*Claude H. Stevens (Berry & Stevens,* of counsel), for plaintiffs.

*William A. Ewart,* City Attorney *(Andrew L. Moore,* of counsel), for defendants.

*Carlos J. Jolly, Walter D. Kline* and *James V. Oxtoby, amici curiæ.*

BUTZEL, J. On July 12, 1920, the electors of the city of Pontiac, Michigan, adopted a home rule charter in conformity with the provisions of article 8, §§ 20, 21, of the Constitution of the State of Michigan, and Act No. 279, Pub. Acts 1909, as amended (1 Comp. Laws 1929, § 2228–2274). On November 28, 1933, the city manager submitted to the city commission, which governs the city, a proposed budget for the fiscal year beginning January 1, 1934. In accordance with the provisions of Act No. 273, Pub. Acts 1925, 1 Comp. Laws, 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931, he included the sum of $562,966.41 for payments of the principal and interest on the general bonded obligations that would become due for the 12 months' period from August 1, 1934. This sum included general city and water obligations but no special assessment obligations. It is expected that $68,306.39 will be realized during the year from the

revenues from the water department, and on application of this amount toward payment of interest on the water bonds, the additional sum of $494,660.02 would be required to pay principal and interest on the city obligations exclusive of the special assessment debts during the year. Notwithstanding this action of the city manager, the city commission on or about January 31, 1934, enacted an annual appropriation ordinance that only included $75,204.86 for debt service in a budget in the amount of $861,-112.74, which was to cover the expenditures of the city for the year. The sum thus included for debt service is $419,455.16 short of the $494,660.02 required for principal and interest on the city's obligations exclusive of special assessment debts maturing during the 12 months' period. The total assessed valuation on real and personal property for the year 1933 was $53,168,555. It was estimated that the assessed valuation for the year 1934 will be a similar amount, and if a tax of two per cent. were levied, it would, if paid, bring in the sum of $1,063,-371. The commission, however, by its ordinance intends to levy a tax on the assessed valuation so as to only realize the sum of $861,112.74, the amount of the budget as set forth in the ordinance. This sum is wholly inadequate to take care of the debt service and the other expenses of the city for the year. If the city undertook to raise a sufficient amount so as to include the debt service for the year, it would be necessary to levy a tax of 2.40 per cent. provided the assessed valuation for 1934 is neither larger nor smaller than that for the year 1933.

Plaintiffs are the members of a bondholders' protective committee for the city of Pontiac by virtue of an express trust contained in a written instrument vesting in them the legal title, with all rights

and powers of ownership, in the bonds deposited
thereunder. In this capacity they hold over 60 per
cent. of the aggregate amount of the bonds and in-
terest maturing during the year beginning August 1,
1934. On February 8, 1934, they sent a written com-
munication to the mayor and the commissioners of
the city of Pontiac, demanding that they levy upon
the 1934 tax roll a sufficient sum so as to pay the full
amount of principal and interest payments matur-
ing during the year for debt obligations, and fur-
ther that the ordinance previously adopted by the
commission for the budget be amended so as to com-
ply with this demand. After futile efforts to agree
upon a mutually satisfactory refunding plan, plain-
tiffs brought the present mandamus proceedings in
this court, to compel the commission of the city of
Pontiac to convene and amend its budget covering
the items for bond principal and interest maturing
during the 12-months' period beginning August 1,
1934, so as to provide the sum of $152,045 for the
payment of principal and interest maturing during
said period upon its water bonds, the sum of $246,250
for the payment of principal maturing during said
period upon its other general obligation bonds, and
the sum of $160,362.41 for the payment of interest
maturing during said period upon its other general
obligation bonds, and that said commission meet and
amend its annual appropriation ordinance for 1934
so as to provide for a tax levy upon the 1934 city
tax roll of the sum of $83,747.61 for the payment of
principal and interest maturing during the 12-
months' period beginning August 1, 1934, upon its
water bonds, the sum of $246,250 for the payment ·
of principal maturing during said period upon its
other general obligation bonds, and the sum of
$160,362.41 for the payment of interest maturing

during said period upon its other general obligation bonds, and that said annual appropriation ordinance be otherwise amended to conform with the foregoing, and that the city commission cause said taxes to be certified to the board of assessors of said city; that said writ of mandamus further require William R. Ransom and Leo J. Heenan, who constitute the board of assessors of said city, to spread said taxes upon the 1934 city tax roll; and that said writ of mandamus further require the performance by the officials of the city of Pontiac of all duties required by law for the levy and collection of taxes. The case is presented on duly verified petition, answer, reply to answer and answer to reply.

Defendants in their answer claim that plaintiffs are not actually the owners of the bonds, and therefore not the proper parties in interest, and have no right to bring the proceedings. The bondholders' protective committee agreement dated October 27, 1932, and attached to the plaintiffs' petition vests in plaintiffs title to the bonds with full power of ownership. They can give full acquittances and surrender the bonds and coupons on payment which they also have the right to enforce. The fact that they are named as trustees in the instrument does not preclude them from suing in their individual names. See *Barak* v. *Detroit Apartments Corp.*, 232 Mich. 59; *Curry* v. *Raich,* 245 Mich. 146; also 3 Comp. Laws 1929, § 14010. Mandamus is the proper method of enforcing plaintiffs' rights. *Burke* v. *City of River Rouge,* 240 Mich. 12; *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673.

Defendants claim that the constitutional provision and legislative enactments herein set forth limit the rights of taxation for city purposes to a maxi-

mum of two per cent. for any fiscal year. They refer to the following provisions of the Constitution:

"ARTICLE 8, SEC. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"SEC. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village, and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, *subject to the Constitution and general laws of this State.*"

Defendants also refer to the following two sections of the home rule act, Act No. 279, Pub. Acts 1909, found in 1 Comp. Laws 1929, §§ 2230, 2241:

"SEC. 3  *  *  *  (f) That the subjects of taxation for municipal purposes shall be the same as for State, county and school purposes under the general law;

"(g) For annually laying and collecting taxes in a sum not to exceed two per centum of the assessed value of all real and personal property in the city.

"SEC. 5. No city shall have power:

"(a) To increase the rate of taxation now fixed by law, unless the authority to do so shall be given by a majority of the electors of said city voting at the election at which said proposition shall be submitted, but the increase in any case shall not be such as to cause such rate to exceed two per centum of the assessed value of the real and personal property in such city."

Charter of city of Pontiac, chap. 9, § 13.

"The aggregate amount which the commission may raise by a general tax upon the taxable real and personal property of the city, for the purpose of defraying the general expenses and liabilities of the corporation, shall not exceed in any one year, two per cent. of the assessed value of all real and personal property in the city, as fixed by the assessment roll of the year preceding the year in which the tax is levied."

Plaintiffs, however, claim that the entire question is ruled by Act No. 273, Pub. Acts 1925, § 5, as amended (1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931), which in part provides as follows:

"Sec. 5. Whenever any money shall be borrowed by any municipality it shall be the duty of every officer or official body charged with any duty in connection with the determination of the amount of taxes to be raised or with the levying of such taxes, to include in the amount of taxes levied each year an amount sufficient to pay the annual interest on all such loans, any instalments of the principal thereof falling due before the time of the following tax collection and all payments required to be made to sinking funds. In any municipality having any debt now outstanding and unpaid, a tax shall in like manner be levied each year, sufficient to pay the interest on such debt falling due before the time of the following tax collection, to pay any principal instalment of serial bonds due before the time of the following tax collection and to deposit into a sinking fund annually an amount which with the increment thereof will be sufficient to pay the principal of such debt at maturity or within the term of any refunding bonds hereby authorized to be issued. * * * Any officer who wilfully fails to perform the duties required of him by this section shall be personally liable to the municipality or to any bond-

holder for any loss or damage arising from such failure. No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing tax limitation.''

They also claim that chapter 10, § 4, of the charter of the city of Pontiac imposes the duty on the city to raise the taxes for debt service in addition to all other amounts required for the operation of city government irrespective of whether the total tax is in excess of two per cent. or not. The section is as follows:

''Whenever bonds shall be issued, it shall be the duty of the commission annually, at the time and in the manner that other taxes are levied, to levy a tax in addition to all other taxes authorized by this charter, sufficient in amount to pay the principal and interest of such bonds as they respectively become due.''

In the address to the people adopted by the constitutional convention at the time it voted to submit the present Constitution, it was stated that while each city was left to frame, adopt and amend its charter provisions, which had reference to its local concerns, the legislature had the power to enact into law such broad, general principles relative to organization and administration as are or may be common to all cities and villages, and it was necessary to impose certain powers and prohibitions designed to secure conservative action on the part of those to become responsible for the future conduct of such affairs. For this reason, the power to limit the rate of taxation and restrict debts was left to the legislature, where it would be subject to such

changes as might be necessary by changing conditions.    2 Debates, Constitutional Convention, p. 1432.

Article 8, § 21, of the Constitution, hereinbefore quoted, expressly states that the charter that might be adopted by a city was subject to the Constitution and general laws of the State.    The legislature in the exercise of this power thus reserved, adopted Act No. 273, Pub. Acts 1925 (1 Comp. Laws 1929, § 2694, as amended by Act No. 142, Pub. Acts 1931, hereinbefore quoted), which specifically stated that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required solely for the payment of debts, and made it necessary for the city to include in the amount of the taxes levied each year a sum sufficient to pay the annual interest and the instalments of principal on its obligations falling due before the time of the following tax collection.    It specifically referred to all debts then outstanding and unpaid. Defendants claim that this act, if it does apply, is unconstitutional in that the title of the act does not show that it is a modification of the home rule act. The title is as follows:

"An act to regulate the issue of bonds, or other obligations, by municipalities in this State, to provide the method of payment of such bonds, or other obligations, and to prescribe the duties of municipal officers and of the State treasurer in connection therewith."

It further provides in the body of the act that all inconsistent acts and parts of acts are repealed (1 Comp. Laws 1929, § 2702).    The title to the act is full and complete.    The act was passed in conformity with the provisions of article 8, § 21, of the Constitution, which provided for the incorporation

of the cities subject to the general laws of this State. In *Harsha* v. *City of Detroit*, 261 Mich. 586 (90 A. L. R. 853), we held that the legislature might modify the charters of municipal corporations at will and that the State still retained authority to amend charters and enlarge and diminish their powers. *City of Kalamazoo* v. *Titus*, 208 Mich. 252; *Clements* v. *McCabe*, 210 Mich. 207; *Attorney General, ex rel. Lennane,* v. *City of Detroit*, 225 Mich. 631. In *Doyle* v. *Election Commission of City of Detroit*, 261 Mich. 546, we again held that the general law passed by the 1931 session of the legislature did not infringe upon the right of municipal home rule and was not unconstitutional; that it being a general law, the home rule charter of the city of Detroit was subject thereto and not infringed thereby. Neither does the 15-mill amendment, article 10, § 21, of the Constitution include home rule cities within its scope. *School District of City of Pontiac* v. *City of Pontiac*, 262 Mich. 338. While the case of *Hammond* v. *Place,* 116 Mich. 628 (72 Am. St. Rep. 543), was decided before the present Constitution and the legislative acts hereinbefore referred to, nevertheless the general principles therein stated still apply. In that case, the plaintiffs obtained a writ of mandamus to compel the assessor to levy upon the tax roll the amount of plaintiff's judgment, which represented the amount due on matured bonds. The defendant contended that such a levy would cause the tax rate to exceed the three per cent. provided in the charter of the city. It stressed the fact that owing to the change in conditions and the moving away of large industries, the city was in very great financial distress and unable to meet its obligations. The court said:

"The contention means this: That the municipality may avoid its legal obligations by the reduction

of its valuation, and making its running expenses equal to the limit of taxation. This is practical repudiation. Whether the valuation of the ·property of this city at $33,000 was reached by the same methods as were severally condemned by this court, speaking through Justice COOLEY, in *Wattles* v. *City of Lapeer,* 40 Mich. 624, we do not know, since there is no explanation in the record. Whether, however, this singular result would follow from a strict construction of the limitation clause in its charter, we need not determine. Possibly in contemplation of such results, a special statute was enacted, providing for the assessment of judgments rendered against municipalities. 3 How. Stat. § 8218. This statute provides that judgments rendered against municipalities shall be assessed by the assessing officers upon its taxable property, and the amount thereof added to the other municipal taxes. It was enforced in *Shippy* v. *Mason,* 90 Mich. 45. It clearly provides for the payment of judgments, exclusive of the limitations to taxation established by municipal charters."

It also stated in answer to the claim that the city was in financial straits, that:

"Poverty, however, is no more defense against just debts in municipal corporations than in any other corporation or an individual."

As the city was bound to take care of its debt service for the year by the provisions of Act No. 273, Pub. Acts 1925, we need not discuss plaintiffs' further contention that chapter 10, § 4 (Pontiac charter), also imposed this duty upon the city.

Defendants further present a dire picture of the financial condition of the city of Pontiac, which is largely dependent upon the automotive industry. They show that owing to the depression and the unemployment that followed, the population of the city decreased from 64,928 inhabitants in 1930 to about

50,000 at the present time; that the assessed valuation of the real and personal property gradually declined from $104,038,274 in 1930 to $53,168,555 in 1933; that the total bonded indebtedness of the city together with past-due interest, and also including special assessment obligations, amounts to $7,767,-989.31, of which $166,739.31 is past due, and that on July 31, 1934, there will be $1,853,024.22 past due; that the territory of the Pontiac union schools is almost co-extensive with the city of Pontiac, so that the property in the city must bear the tax burden to support not only the city of Pontiac and its debt service, but also to maintain the Pontiac union schools and pay the latter's obligations which amount to $3,960,973.98. They further show that the equalized valuation of the city of Pontiac is approximately one-third of that of the entire county of Oakland; that the county has $8,440,514.71 of outstanding Covert bonds, $6,388,012.77 of drain bonds, $1,194,115 of general obligation bonds or a total of $16,022,642.48; that the city of Pontiac has 15 major industries, including two power and electric light plants, and over 34 per cent. of the assessed valuation of the city is on property of industry, which furnishes over one-third of the total tax income; that the city is exercising rigid economy and has cut down its budget over one-half since 1930; that it has delinquent taxes for the years 1930 to and including 1933, amounting to $1,729,607.51, an amount almost sufficient to pay past due obligations of the city up to July 31, 1934; that, based on the experience of the past three years, the city faces a tax delinquency of approximately 50 per cent.; that the resolution fixing the budget at $861,112.74 for the fiscal year expressly contained a provision that nothing therein contained should be construed as

any action on the part of the commission to repudiate or impair any obligations theretofore incurred by the city of Pontiac.

Plaintiffs, on the other hand, claim that defendants have exaggerated the impoverished condition of the city, when, as a matter of fact, it is emerging from its difficulties, and they call attention to the fact that the condition of the automotive industry is much improved; that during the year the number of men unemployed has very much decreased, that the general financial condition of the city is far better than it was a year ago when all the banks in the city had but shortly before closed down and business had come to a standstill. They further show, in answer to defendants' claim that it might be obliged to spend $600,000, or thereabouts, for welfare during the coming year, that such relief has almost entirely come from the State and Federal governments, and that defendants recognized this fact by only appropriating $100,000 in the budget for such purposes; that proper provision has been made to partly relieve county roads from Covert road taxes, and to refund the school district debt, and that, as a matter of fact, the city at the present time has upwards of $400,000 in its treasury, though defendants claim that when necessary expenditures are made and this fund is allocated, this amount will be reduced one-half; that many other claims of defendants are based on erroneous calculations. Plaintiffs further show that, while the assessed valuation, as determined by the State board of tax commissioners was $53,168,555 for the year 1933, the board of supervisors placed it for equalization purposes for State and county taxes at $66,874,793; that the city has refused to pay any debts or interest for a considerable period, and that other court proceed-

ings are now pending to force the city to devote moneys collected for debt service to such purpose.

Defendants show that industry has paid a very large part of the taxes that heretofore have been collected, and that placing the tax rate at too high a rate defeats its own purpose, for if taxes are so high as to become confiscatory, industry may move away. They further claim that raising the rate of taxation to too high a figure operates very much like the law of diminishing returns, and will result in a very much larger delinquency and the raising of less money than if the tax were kept at a lower rate. They show that a very large amount of property has not paid any taxes whatever for a number of years, and that such delinquency will continue. They further contend that if the city is called upon to meet its obligations it may result in so depleting its funds that it will not be able to function properly and untoward results may follow.

A further review of the contentions of the parties is unnecessary. We are impressed with the fact that the city of Pontiac has suffered from the economic depression and the deflation of values more than many other cities. It, however, has even neglected to make provision for the interest on the city's obligations for the year. Defendants simply state that bondholders should wait for the payment of the interest and principal maturing from year to year until the financial clouds disappear, and that in the meantime the city should not be called upon to pay its admitted debts.

We believe that the city has shown that a refunding plan may be necessary, a situation that should appeal most strongly to plaintiffs, and that if they are too harsh in their demands the bondholders will eventually suffer. On the other hand, we cannot overlook plaintiffs' claim that while the city

may not have purposely avoided its obligations, it has not done all it might have to meet its obligations and it has not the right to insist that the bondholders carry the entire burden. We are asked in effect to declare a moratorium of the city of Pontiac's debts, and if we cannot do this, to refuse a writ of mandamus on account of the emergency that exists according to defendants' claims. A writ of mandamus is one of grace. In *Thompson* v. *Auditor General,* 261 Mich. 624, where a temporary but very great emergency arose, and other legislation was contemplated to meet the crisis, we declined to issue a writ of mandamus in considering an emergency measure passed by the legislature under the police power. This was at a time when the banks were closed and it was deemed a useless waste of money to advertise the sale of property for delinquent taxes that could not be paid on account of unusual circumstances. The present condition is in no sense comparable with the one that existed at that time. We are firmly convinced that a fair and proper refunding plan should be agreed upon. The obligation of the city is manifest. The right of the plaintiffs is clear in point of law. We have not the legal right under the conditions as presented to withhold a writ of mandamus. Unless the city commission within the next 10 days reconvenes and amends its annual appropriation ordinance so as to include a sum sufficient to pay the principal payments and interest that mature for the 12-months' period beginning August 1, 1934, and within a reasonable time thereafter taxes are levied accordingly, mandamus will issue as prayed for. No costs will be allowed.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.