CITY OF JACKSON *v.* CONSUMERS POWER CO.

1. GAS—MUNICIPAL CORPORATIONS—ORDINANCES—RESERVATION OF CONTROL—RATES.

In 1887 franchise ordinance granting perpetual right to use city streets for gas mains, to furnish gas and operate in the city in a public service capacity, wherein maximum rate was fixed and reserved to the city council the "right to alter or amend this ordinance and to make such further rules, orders and regulations as may from time to time be deemed necessary to protect the interest, safety or welfare of the public, or the rights of property of" the city, the reservation did not

vest the council with power to fix *ex parte* the rate at which gas should be furnished to consumers (Jackson Ordinance No. 64, §§ 5, 6).

2. PUBLIC SERVICE COMMISSIONS—REGULATION OF UTILITIES—RATES —SERVICE.

The State public service commission is vested with complete power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, condition of service and all other matters pertaining to the formation, operation, or direction of all public utilities in the State except any municipally-owned utility and except as otherwise restricted by law (Act No. 3, Pub. Acts 1939).

3. GAS—RATES—PUBLIC SERVICE COMMISSION.

A company holding a franchise to use city streets for gas mains, to furnish gas and operate in the city in a public service capacity pursuant to an ordinance after the last former rates agreed upon by the city council and the company had expired has the right to promulgate rates subject to the control of the State public service commission (Act No. 3, Pub. Acts 1939; Jackson Ordinance No. 64, §§ 5, 6).

4. SAME—RATES—ORDINANCES—PUBLIC SERVICE COMMISSION.

The rate for gas as fixed in a franchise ordinance is not binding on the gas company after the rate as so agreed has expired and where the company continues the service thereafter it has a right to fix a reasonable charge therefor, which will not fail because not approved by the public service commission (Act No. 3, Pub. Acts 1939).

5. MUNICIPAL CORPORATIONS—CONTROL OF STREETS—PUBLIC UTILITIES —RATES.

The reserved constitutional power in a city to the control of its streets empowers it to contract, not to legislate, for public utility rates; the power to legislate with reference thereto having been lodged by the legislature in the public service commission (Const. 1908, art. 8, § 28; Act No. 3, Pub. Acts 1939).

6. GAS—RATES—MUNICIPAL CORPORATIONS—GAS COMPANY.

Promulgation of gas rate for city by gas company which had a perpetual franchise at same rate as that approved by the public service commission for other cities receiving the same gas service and constituting a part of the same distribution system after the expiration of the rates as hitherto agreed upon with city council was within the right of the company,

the city's remedy being with the public service commission
as a city does not have power to fix the rates *ex parte* (Const.
1908, art. 8, § 28; Act No. 3, Pub. Acts 1939; Jackson Ordi-
nance No. 64, §§ 5, 6, as amended by Ordinance No. 189).

7. MUNICIPAL CORPORATIONS—GAS—RATES—PUBLIC SERVICE COM-
MISSION.

> A city is not entitled to relief by way of accounting and re-
> funds for alleged illegal charges for gas rates under ordi-
> nance reducing *ex parte* gas rates, where the power to legis-
> late as to utility rates has been conferred upon the public
> service commission, the city's remedy being with such com-
> mission (Const. 1908, art. 8, § 28; Act No. 3, Pub. Acts
> 1939; Jackson Ordinance No. 64, §§ 5, 6, as amended by
> Ordinance No. 189).

8. SAME—CHARTERS—HOME RULE CITIES—STATUTES.

> A provision in the general laws of the State to which a home-
> rule charter is subject supplants any contravening charter
> provision.

9. CORPORATIONS—POWER TO AMEND OR REPEAL CHARTERS OF PRI-
VATE CORPORATIONS.

> Rule that corporate charters in which no power of amendment
> or repeal is retained, when accepted, constitute contracts be-
> tween State and corporation, applies to private corporations
> only.

10. MUNICIPAL CORPORATIONS—STATE AGENCIES—LEGISLATURE MAY
MODIFY CHARTERS.

> Municipal corporations are State agencies, and, subject to
> constitutional restrictions, legislature may modify corporate
> charters of municipal corporations at will.

11. SAME—CONSTITUTIONAL LAW.

> Powers are granted to municipal corporations as State agencies
> to carry on local government, and State has authority to
> amend their charters and enlarge or diminish their powers.

12. GAS—RATES—PUBLIC SERVICE—HOME-RULE CITY CHARTER.

> The power to regulate gas rates finally is vested in the public
> service commission notwithstanding provision of a home-rule
> city's charter lodging such power in a city commission since
> such a charter is subject to the general laws of the State
> (Act No. 3, Pub. Acts 1939; Jackson Charter 1914, § 5).

13. JUDGMENT—RES JUDICATA—GAS RATES—PUBLIC SERVICE COM-
MISSION'S OPINION.

> Since a statement in a preliminary portion of the opinion of the
> public service commission's opinion that gas rates in plaintiff

city were fixed by franchise was not embodied in findings or holdings of the commission, such statement was not *res judicata* as to defendant company and did not estop it from making a contrary contention in city's suit against company for an accounting and refunds of alleged illegal charges, notwithstanding no appeal was taken in case before commission.

14. Same—Final Judgment Binding.

Where a case is appealed it is the judgment entered upon such appeal which concludes the parties, and they are not bound by opinions or statements of the court seeking to define the extent to which such judgment shall prejudice the rights of the parties in other actions.

Appeal from Jackson; Des Jardins (George W.), J., presiding. Submitted June 7, 1945. (Docket No. 41, Calendar No. 43,035.) Decided October 8, 1945.

Bill by City of Jackson against Consumers Power Company, a Maine corporation, for an accounting of money received from gas rates and refunds and for injunction restraining fixing of rates higher than those set by ordinance. Decree for defendant. Plaintiff appeals. Affirmed.

*Frank L. Blackman,* for plaintiff.

*Bisbee, McKone, Badgley & McInally, Walter D. Kline,* and *William R. Roberts,* for defendant.

North, J. This is an appeal from a decree in the Jackson county circuit court in chancery dismissing plaintiff's bill of complaint, wherein injunctive relief, accounting and refunds are sought as to the alleged illegal charge for gas furnished by defendant. Consumers Power Company, a Maine corporation, is the successor to rights of several predecessor holders of the franchise in suit, each of which,

except as otherwise indicated, is hereinafter designated as the "company." March 28, 1887, Jackson common council adopted a franchise ordinance granting to the original company the right to use city streets for gas mains, to furnish gas, and in that field to operate in Jackson in a public service capacity. This franchise, known as Ordinance No. 64, was without limit as to time or date of expiration, and is therefore conceded by the litigants to be perpetual.

The provisions of the franchise particularly pertinent to decision in the instant case are sections 5 and 6.

"SEC. 5. Gas manufactured * * * shall be furnished * * * at the price of not to exceed $2 per thousand cubic feet, and shall be furnished to said city of Jackson for public lighting and for all purposes for which it may desire to use the same at not to exceed $1.50 per thousand cubic feet.

"SEC. 6. There is hereby reserved to the common council of the city of Jackson the right to alter or amend this ordinance and to make such further rules, orders and regulations as may from time to time be deemed necessary to protect the interest, safety or welfare of the public, or the rights of property of said city of Jackson."

Section 5 was amended July 2, 1906, changing the rates to be charged, and amended again as to rates August 5, 1918 and November 19, 1918. All of these amendments were accepted by the company. During the years 1918 to 1920 the rate was modified on three occasions as a result of an express agreement between the parties. October 19, 1943, Ordinance No. 189 was passed by the city, amending Ordinance No. 64. It reduced the gas rate about 20 per cent. This ordinance was not accepted by the

company. Instead it continued its then current rate, with the result that the city brought the instant suit to enforce the 1943 Ordinance No. 189; and this appeal followed dismissal of the suit, such dismissal being primarily on the ground that Ordinance No. 189 was void.

Prior to 1943 manufactured gas had been supplied in the city of Jackson from a local gas works. During 1941 and 1942 a natural gas distribution system was worked out by the company and interconnected with the company's distribution system which served Jackson and various other cities, thus constituting a single utility system. While the company was making these arrangements, it applied in May, 1941, to the Michigan public service commission for authority to connect the various systems and to change over from manufactured to natural gas. It also petitioned the commission to fix rates to be charged. By its order dated June 23, 1941, the commission gave approval to the plan and also approved a uniform rate schedule for the utility area, but refrained from making its rate applicable in the city of Jackson. The reason for the nonaction of the commission was stated by it as follows: "The commission's records show that the rates in all of the communities affected by this change from manufactured to natural gas are under the jurisdiction of the commission with the exception of the cities of Jackson (and other municipalities not here involved), in which cases the rates are regulated by franchise." The company, believing it had the right, in January, 1943, promulgated identical rates for the city of Jackson as had been approved by the Michigan public service commission for the other cities receiving the same gas service and constituting a part of the same distribution system.

The city claims that, because of the power reserved to it in section 6 of the franchise ordinance

above quoted, it has the right, without consent on the part of defendant, to fix the rate which the latter may charge for furnishing gas to the Jackson consumers. Defendant denies that the city had or has the asserted power; and contends that under the terms of the franchise ordinance the rate could be fixed (and at all times prior to 1937 was fixed) by agreement of the parties; and that since subsequent to 1937 the rate was not so fixed in Jackson, defendant itself had the power to fix the rate to be charged for its service, subject to the control of the Michigan public service commission.

The primary question is whether Ordinance No. 64, by which the Jackson city council in 1887 granted the franchise, by reservation therein gave the city council the power to fix from time to time the rate which the company could charge for its service. It is not claimed, nor could it be, that such a reservation of power is set forth in express words in the franchise ordinance. Instead, after providing in section 5 a maximum rate, the reservation in section 6 is: "the right to alter or amend this ordinance and to make such further rules, orders and regulations as may from time to time be deemed necessary to protect the interest, safety or welfare of the public, or the rights of property of said City of Jackson."

In *Detroit* v. *Railway Co.*, 184 U. S. 368 (22 Sup. Ct. 410, 46 L. Ed. 592), reservations of like import in franchise ordinances were held not to vest in the city power to fix a reduced fare without the consent of the street railway company. The similarity of the reserved powers considered in the *Detroit Case* to those in the instant case appears from one of the charter provisions there involved. It reads:

"It is hereby reserved to the common council of the city of Detroit the right to make such further

rules, orders or regulations as may from time to time be deemed necessary to protect the interest, welfare or accommodation of the public in relation to said railways."

Elsewhere in the Detroit franchise ordinance it was provided: "that the rate of fare for a single trip shall not exceed five cents." While there are some varying circumstances in consequence of which appellant herein seeks to distinguish the *Detroit Case* from the instant case, still we think it is an authority in the light of which the reservation in the Jackson franchise ordinance should be construed. In the *Detroit Case* it appears that the city council sought by an amendment to the ordinance which granted the franchise to fix the fare at less than five cents. In the opinion rendered by the supreme court of the United States, as appears from the syllabi which we quote, it held:

"That the rate of fare having been fixed by positive agreement, under express legislative authority, the subject was not open to alteration thereafter by the common council alone, under the right to prescribe from time to time the rules and regulations for the running and operation of the road.

"That the language of the ordinance which provides that the rate of fare for one passenger shall not be more than five cents does not give any right to the city to reduce it below the rate of five cents established by the company. * * *

"That the fixing of rates, being among the vital portions of the agreement (franchise) between the parties, it cannot be supposed that there was any intention to permit the common council, in its discretion, to make an alteration which might be fatal to the pecuniary success of the company."

In passing upon the construction to be given to the above-quoted reservation of power in the Detroit franchise ordinance, the court said (p. 384):

"It would rather seem that the language above used did not and was not intended to give the right to the common council to change at its pleasure from time to time those important and fundamental rights affecting the very existence and financial success of the company in the operation of its road, but that by the use of such language there was simply reserved to the city council the right from time to time to add to or alter those general regulations or rules for the proper, safe and efficient running of the cars, the character of service, the speed and number of cars and their hours of operation and matters of a like nature.   *   *   *   Such would seem to be a reasonable construction of the language."

In *Owensboro* v. *Cumberland Telephone & Telegraph Co.*, 230 U. S. 58 (33 Sup. Ct. 988, 57 L. Ed. 1389), the court had before it the construction of a provision in a franchise ordinance which read: "SEC. 6. This ordinance may be altered or amended as the necessities of the city may demand." Some years after defendant had been operating under the franchise the city attempted to condition future operations of the company in the city streets upon the payment periodically of certain amounts to the city. In holding that, notwithstanding the above quoted reservation of power, the attempted action of the city was illegal, the court said (p. 72):

"The sixth section of the granting ordinance provides that, 'This ordinance may be altered or amended as the necessities of the city may demand.' This is no more than a reservation of the police control of the streets, and of the mode and manner of placing and maintaining the poles and wires incident to the unabridgeable police power of the city. (Citing cases). It does not reserve any right to revoke or repeal the ordinance, or to affect the rights therein granted."

In accord with the foregoing authorities, and others of like purport which we deem it unnecessary to discuss, we hold that the reservation quoted from the 1887 franchise ordinance did not vest in the Jackson city council power to fix *ex parte* the rate at which gas should be furnished to consumers in that city. And it may be noted that our holding in this respect is in accord with the construction which was from time to time placed upon the franchise by the city and the company. Between 1887 and 1936 numerous changes in the rate were made, but in each instance such change became effective only upon the approval and acceptance by the company.

Plaintiff and defendant disagree as to which of them had the right to initiate a rate after the rate which had been fixed by mutual agreement expired August 14, 1937. On the one hand plaintiff asserts it had the right to fix the rate, and on the other hand defendant asserts that it had the right to fix the rate, provided such rate was just and reasonable. In this connection it should be noted that the parties to this appeal have stipulated:

"1. There was no rate fixed by franchise ordinance or agreement effective after August 14, 1937.

"2. The rate fixed by section 5 of the original franchise ordinance did not become reinstated after January 1, 1936."

Thus the question for determination in this particular is: Did defendant have the right to initiate a rate for gas service as it did after the last of the former rates agreed upon by the parties expired. Defendant company in January, 1943, promulgated rates. These rates were the same as the rates authorized by the Michigan public service commission

in June, 1941, for other areas named in its order
and receiving like service.   If the rates promulgated
by defendant in January, 1943, were unjust or un-
reasonable, the city's remedy at the time it sought
to fix the rate by ordinance in October, 1943, was re-
course to the Michigan public service commission.
Act No. 3, Pub. Acts 1939 (Comp. Laws Supp. 1940,
§ 11017–1 *et seq.*, Stat. Ann. 1944 Cum. Supp. § 22.13
[1] *et seq.*), vested in the Michigan public service
commission powers and jurisdiction of the type here
involved which theretofore were vested in the Michi-
gan utilities commission.   Section 6 of the 1939 act
provides:

"The Michigan public service commission is
hereby vested with complete power and jurisdiction
to regulate all public utilities in the State except
any municipally owned utility and except as other-
wise restricted by law.   It is hereby vested with
power and jurisdiction to regulate all rates, fares,
fees, charges, services, rules, conditions of service
and all other matters pertaining to the formation,
operation, or direction of such public utilities. * * *
"SEC. 8.   All acts or parts of acts in any way con-
travening the provisions of this act shall be deemed
to be superseded and repealed hereby."

Under our former holdings it seems clear that the
defendant company had the right to promulgate
rates, subject, however, to the control of the Michi-
gan public service commission.   See *Walker Broth-
ers Catering Co.* v. *Detroit City Gas Co.*, 230 Mich.
564 (P. U. R. 1925 D, 366) ; *City of Detroit* v. *Michi-
gan Public Utilities Commission*, 288 Mich. 267 (29
P. U. R. [N. S.] 203) ; and *City of Dearborn* v.
*Michigan Consolidated Gas Co.*, 297 Mich. 388 (39
P. U. R. [N. S.] 31).

In the first of the above-cited cases the gas company's franchise had expired; but in the instant case the period during which these litigants had fixed the rate by agreement had expired. Hence the following quotation from the syllabus in the first cited case seems applicable to the instant case:

"The rate fixed in a gas company's franchise is not binding after the franchise has expired, and where it continues the service it has the right to fix a reasonable charge therefor, which will not fail because not acted upon by the public utilities commission under Act No. 419, Pub. Acts 1919."

A syllabus in the cited *Detroit v. Michigan Public Utilities Commission* case reads:

"The reserved constitutional power in a city to the control of its streets (Const. 1908, art. 8, § 28) empowers it to contract, not to legislate, for public utility rates; the power to legislate with reference thereto having been lodged by the legislature in the public utilities commission."

And in the cited *Dearborn Case* we said:

"With reference to the promulgation of rates by the company after the expiration of rates in the schedule included in the franchise, it must be held that such action of the company was not unlawful."

We conclude that, under the circumstances disclosed by this record, defendant had the right to promulgate the gas rate in Jackson as it did in January, 1943. As hereinbefore indicated, the city of Jackson under the franchise ordinance did not have the power to fix *ex parte* the gas rate; and it follows that its attempt to do so in Ordinance No. 189 which it passed in October, 1943, was ineffective; and since the relief sought in the instant case

is predicated upon the enforcement of the 1943 ordinance, plaintiff obviously was not entitled to such relief. Instead, as above stated, its remedy was by proper proceedings before the Michigan public service commission. It is so provided in Act No. 3, Pub. Acts 1939, hereinbefore quoted.

In support of its contention that the Jackson city council had the power to fix *ex parte* gas rates in Jackson, plaintiff to some extent relies upon the fact that in 1914 Jackson adopted a home-rule city charter, and that charter contained the following provision:

"SEC. 5. Subject to the limitations of the charter and of the general laws, the city commission shall have power: * * * To regulate the prices to be charged for gas, heat or electricity, by all persons owning or operating in the streets and public places of the city, wires, pipes and conduits."

Plaintiff's contention is not tenable. By the express terms of the charter the quoted provision is "Subject to the limitations * * * of the general laws" of the State. As hereinbefore noted, in 1939 the legislature passed a general law (Act No. 3, Pub. Acts 1939) by which it is provided:

"SEC. 6. The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges," et cetera.

This provision in the general laws of the State, to which Jackson's home rule charter was subject, supplanted any contravening charter provision. *City Commission of the City of Jackson* v. *Vedder*,

209 Mich. 291; *Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853); and *Simonton* v. *City of Pontiac,* 268 Mich. 11. In the latter case it is said:

"In *Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853), we held that the legislature might modify the charters of municipal corporations at will and that the State still retained authority to amend charters and enlarge and diminish their powers."

We quote the following from the syllabi in the *Harsha Case.*

"Rule that corporate charters in which no power of amendment or repeal is retained, when accepted, constitute contracts between State and corporation, applies to private corporations only.

"Municipal corporations are State agencies, and, subject to constitutional restrictions, legislature may modify corporate charters of municipal corporations at will.

"Powers are granted to municipal corporations as State agencies to carry on local government, and State has authority to amend their charters and enlarge or diminish their powers."

Since, as we hold, there was not reserved to the Jackson common council in the 1887 franchise contract either expressly or by necessary implication the right to fix *ex parte* gas rates in Jackson, the power to finally regulate such rates is now by Act No. 3, Pub. Acts 1939, vested in the Michigan public service commission. This is true notwithstanding the quoted provision in the Jackson home rule charter.

As herein before noted, the public service commission recited in its opinion that its "records" disclose that the gas rates in Jackson "are regu-

lated by franchise." We are not in accord with plaintiff's contention that the foregoing is *res judicata* and estops defendant from making a contrary contention in the instant case. The foregoing statement by the commission appears only in the preliminary part of its opinion. It is not embodied in the findings or holdings of the commission nor in the order made by the commission. The trial judge in holding against plaintiff's contention stated: "No issue was framed on the subject, and it is not even apparent from what source this finding came, or upon what it is based." Since the portion of the commission's opinion upon which plaintiff relies in this particular does not constitute a part of its determination, its findings or its ultimate holding or order, it cannot be held to be *res judicata* and binding as such upon defendant, notwithstanding no appeal was taken.

"We recognize the rule that it is the judgment entered upon such appeal which concludes the parties, and that the parties are not bound by opinions or statements of the court seeking to define the extent to which such judgment shall prejudice the rights of the parties in other actions (23 Cyc. p. 1218)." *Nott* v. *Gundick,* 216 Mich. 217, 222.

Other reasons or grounds in support of the conclusion that the mere recital by the public service commission was not *res judicata,* will be found in *Stratton* v. *California Railroad Commission,* 186 Cal. 119 (198 Pac. 1051).

The decree entered in the circuit court dismissing plaintiff's bill of complaint is affirmed, with costs to defendant.

STARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.