AMERICAN AXLE & MANUFACTURING, INC v CITY OF HAMTRAMCK

Docket No. 191628. Submitted March 11, 1997, at Detroit. Decided December 23, 1997, at 9:00 A.M. Leave to appeal sought.

American Axle & Manufacturing, Inc., petitioned the Tax Tribunal, contesting the 1992 levy by the City of Hamtramck on the property owned by the petitioner of a judgment tax assessment levied pursuant to the § 6093 of the Revised Judicature Act, MCL 600.6093; MSA 27A.6093. The respondent, without voter approval, had levied the judgment tax assessment to satisfy a consent judgment that had been entered against it. The petitioner alleged that the judgment tax assessment was unlawful because it caused the total ad valorem property tax rate imposed by the respondent to exceed the maximum rate authorized by the Michigan Constitution, by statute, and by the respondent's city charter. The Tax Tribunal denied summary disposition for the respondent and granted summary disposition for the petitioner, concluding that § 6093 did not authorize the respondent to levy ad valorem property taxes at a rate that exceeded the rate limitation contained in the respondent's city charter without first having received the approval of the city's voters. The respondent appealed.

The Court of Appeals *held*:

1. Const 1963, art 9, § 6, as amended by the so-called Headlee Amendment, which amended Const 1963, art 9, § 6 and added Const 1963, art 9, §§ 25-34, places limits on the rate of ad valorem taxes, but provides that those limitations do not apply to the payment of the principal and interest of bonds approved by the electors or, subject to the provisions of §§ 25 through 30, "to taxes imposed for any other purpose by any city, . . . the tax limitations of which are provided by charter or by general law." Const 1963, art 9, § 31 provides that local units of government are prohibited from "levying any tax not authorized by law or charter when this section was ratified . . . without the approval of a majority of the qualified electors."

2. Section 5(a) of the home rule cities act, MCL 117.5(a); MSA 55.2084(a), provides that a home rule city does not have the power to increase the rate of taxation fixed by law without approval of a majority of the electors of the city and any increase shall not cause

the rate to exceed two percent of the assessed value of the real and personal property in the city, "except as provided by law." The language of § 5(a) was incorporated into the respondent's charter.

3. The respondent contends, as it did before the Tax Tribunal, that because § 6093 was enacted in 1961 and was thus in effect on the date that the Headlee Amendment took effect, December 23, 1978, the judgment tax assessment levied pursuant to § 6093 falls within the exceptions to the rate limitations contained in the Headlee Amendment, the home rule cities act, and its city charter.

4. Because § 6093 does not give specific statutory authority to supersede existing tax rate limitations but, rather, simply states that the assessing officer "shall proceed to assess" the amount of a judgment on the next tax roll, a judgment tax levy pursuant to that section neither falls within the exception to the tax rate limitations of the Headlee Amendment nor acts as an exception "as provided by law" to the rate limitations contained in § 5(a) of the home rule cities act or the respondent's city charter.

Affirmed.

TAXATION — JUDGMENT TAX ASSESSMENTS — AD VALOREM TAXES — HOME RULE CITIES — VOTER APPROVAL OF TAXES.

A home rule city may not levy without the approval of the voters a judgment tax assessment pursuant to the Revised Judicature Act to the extent that the levying of such an assessment would cause the city's total ad valorem property tax rate to exceed the tax rate limits set forth in the Michigan Constitution, the home rule cities act, or the city's charter (Const 1963, art 9, §§ 6, 31; MCL 117.5, 600.6093; MSA 5.2084, 27A.6093).

*Jackier, Gould, Bean, Upfal, Eizelman & Goldman, P.C.* (by *A. Jeffrey Bean* and *Andrew J. Bean*), for the petitioner.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Stratton S. Brown, Robert E. Hammell, Samuel J. McKim, III,* and *Charles L. Burleigh, Jr.*), for the respondent.

Before: SAWYER, P.J., and SAAD and GAGE, JJ.

SAWYER, P.J. Respondent appeals from an order of the Michigan Tax Tribunal in favor of petitioner on its challenge to respondent's judgment tax assessment

levied under MCL 600.6093; MSA 27A.6093. We affirm.

This dispute has its origins in the sale of a vacant parcel of land by respondent. The land proved to be contaminated, and, ultimately, a judgment was obtained against respondent for cleanup costs. Respondent then proceeded to impose a judgment tax levy under § 6093 of the Revised Judicature Act, MCL 600.6093; MSA 27A.6093. This judgment tax levy caused the ad valorem property tax rate imposed by respondent to exceed the maximum rate authorized by the Michigan Constitution, the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*, and respondent's city charter. Petitioner, one of respondent's largest taxpayers, paid its tax bill, but instituted the instant proceeding challenging the legality of the tax levied by respondent to satisfy the judgment. The Tax Tribunal granted petitioner's motion for summary disposition, concluding that § 6093 did not authorize an increase in the tax rate because that tax rate was not approved by a public vote. The tribunal ordered respondent to refund the additional tax plus interest.

The essential question presented for our review is whether the judgment tax levy provisions of § 6093 provide an exception to the tax limitations contained in the Michigan Constitution, the home rule cities act, and the city charter. We agree with the tax tribunal that it does not.

At the November 7, 1978, general state election, voters in the State of Michigan approved Proposal E, better known as the Headlee Amendment. This constitutional amendment, which took effect on December 23, 1978, amended Const 1963, art 9, § 6, and

added §§ 25 through 34. Under the amended § 6, "the total amount of general ad valorem taxes imposed upon real and tangible personal property for all purposes in any one year shall not exceed 15 mills on each dollar of the assessed valuation of property as finally equalized," unless approved by a majority of the electors. Section 6, as amended, further stated:

> The foregoing limitations shall not apply to taxes imposed for the payment of principal and interest on bonds approved by the electors . . . or, subject to the provisions of Section 25 through 34 of this article, to taxes imposed for any other purpose by any *city*, village, charter county, charter township, charter authority or other authority, *the tax limitations of which are provided by charter or by general law.* [Emphasis added.]

Therefore, although an exception does exist for chartered cities, those cities are subject to the Headlee Amendment through the operation of the provisions of §§ 25-34 of article 9.

The drafters' notes explaining the Headlee Amendment indicate that a "tax revolt" spirit precipitated the proposed amendment and further state that the added sections

> were intended to strengthen the process of direct voter approval over total taxation and spending levels; and it was intended that the legislative, judiciary, and administrative branches of government be so guided. [Drafters' Notes— Tax Limitation Amendment (Taxpayers United Research Institute, February 15, 1979), p 3.]

The particular portion of the Headlee Amendment at issue here, § 31, states:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this

> section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.

Once again, turning to the description of the purpose behind this section, the drafters' notes indicate that the intent of the wording of § 31 was to allow local governmental units to retain the taxing power they had before the effective date of the amendment. Drafters' Notes, supra, 11. Specifically, the notes indicate: "Thus, A local unit that was not levying or imposing the full amount of its taxing authority at the time of the effective date of the amendment would continue to be able to exercise such power after the effective date of the amendment." *Id.*, 11-12.

Although the language of the Michigan Constitution makes it clear that a city has substantial autonomy in formulating its charter, the Legislature enacted the home rule cities act as a limitation on the taxation power of a city. *Detroit v Walker*, 445 Mich 692, 688; 520 NW2d 135 (1994). Section 5 of the act, MCL 117.5; MSA 5.2084 states:

> A city does not have power:
> (a) To increase the rate of taxation now fixed by law, unless the authority to do so is given by a majority of the electors of the city voting at the election at which the proposition is submitted, but the increase in any case shall not be such as to cause the rate to exceed 2%, *except as provided by law*, of the assessed value of the real and personal property in the city. [Emphasis added.]

The parties concede that the City of Hamtramck has incorporated this language into its charter.

On appeal, respondent contends that it did not violate the provisions of the Headlee Amendment, the home rule cities act, and its own charter when it levied a tax to satisfy a judgment debt pursuant to § 6093 of the Revised Judicature Act. Respondent claims that because § 6093 was enacted in 1961, before the ratification of the Headlee Amendment, it thereby falls within the exceptions established under the Headlee Amendment, the home rule cities act, and the charter of the City of Hamtramck that allow it to levy the judgment tax despite the fact that the resulting tax rate exceeds the rates prescribed by the constitution, by statute and by the charter. This is a question for this Court.

Turning to the Headlee Amendment of the Michigan Constitution, the first of the potential restrictions on the power of the city to levy this judgment tax under § 6093, respondent contends that the provisions of the Headlee Amendment did not change the prior constitutional mandate, other than to provide that charters and general laws were subject to the Headlee Amendment. In addition, respondent claims the only relevant constitutional provision here, § 31, allows an exception for taxes or tax increases "authorized by law or charter" before the ratification of the Headlee Amendment. Respondent contends that because § 6093 was enacted before the ratification of the Headlee Amendment, the levy here, which caused the total tax rate imposed by it to exceed the constitutionally proscribed limit of twenty mills, was constitutionally authorized.

To substantiate its claim, respondent cites several cases. First, respondent points to the holding in *Bailey v Muskegon Co Bd of Comm'rs*, 122 Mich App 808,

821; 333 NW2d 144 (1983). In *Bailey*, this Court held that an accommodations tax, adopted by the Muskegon County Board of Commissioners pursuant to authority granted under MCL 141.862; MSA 5.3194(372), did not violate Const 1963, art 9, § 31, even though the tax did not receive voter approval. A close examination of the case, however, demonstrates that the holding in *Bailey* was based on the principle that a tax need not actually be levied on the date that the Headlee Amendment became effective, but need only be authorized by law before that date. The decision did not address the question whether a previously authorized tax, such as the judgment levy in this case, could exceed constitutional limitations. *Bailey, supra,* 821. In fact, in discussing the ballot description for Proposal E, which subsequently was ratified as the Headlee Amendment, the Court in *Bailey* stated:

> The language of the ballot description, indicating that the Headlee Amendment would prohibit local governments from adding any new, or increasing any existing, taxes without voter approval does not plainly distinguish between those taxes that were authorized by statute at the time of the adoption of the Headlee Amendment and those taxes that were authorized *and levied* at the time that the amendment was ratified. If this language is taken to mean that local governments were prohibited from adding any new taxes not authorized by law, *or increasing any existing taxes above the maximum limit permitted by existing law without voter approval,* then the ballot description would have sufficiently described the proposed amendment. However, if the language of the description was meant to convey the idea that local units of government could not enact any new taxes even if previously authorized by law, or increase existing taxes up to the authorized maximum limit without voter approval, then the ballot description does not

adequately reflect the language of the Headlee Amendment or the intent of its drafters. [Id., 822-823 (emphasis added).]

Another case cited by respondents is *Smith v Scio Twp*, 173 Mich App 381, 383; 433 NW2d 855 (1988), a case wherein this Court addressed the issue whether a township board's taxing authority was limited to its preincorporation level without a separate vote of the electors, where the electors voted to become a charter township. This Court held that by voting to incorporate, the electors also approved the adoption of a five-mill limitation on the township board's taxing authority as permitted by law and charter. *Id.*, 388. The Court stated:

> The Headlee Amendment imposes specific limitations on the authority to impose additional taxes without voter approval. It does not require voter approval of increased tax levies where the authority to make the levy has already been approved. [*Id.*]

Once again, it is clear that the issue analyzed in *Smith* did not address a local governmental unit's authority to increase a tax levy beyond constitutional restrictions without voter approval.

Respondent also points to the holding of the United States district court in *Detroit v Highland Park*, 878 F Supp 87 (ED Mich, 1995). That case directly addressed the issue of a judgment levy under MCL 600.6093;   MSA 27A.6093   in light of the Headlee Amendment provisions. *Id.*, 88. The court stated:

> Chrysler states that under this provision the writ of mandamus is unconstitutional because it would force defendant to levy taxes in excess of 20 mills without voter approval.
>
> Chrysler's position is inaccurate. The Headlee Amendment does not prevent imposition of a tax or tax increase

> that was authorized prior to the time the Headlee Amendment took effect. MCL 600.6093 was enacted prior to the Headlee Amendment. Therefore, a tax increase necessitated by a valid court judgment is not within the prohibitions of the Headlee Amendment. In addition, as is shown below, state law cannot prevent a federal judge from enforcing his judgments. [*Id.*, 89 (citations omitted).]

This language would seem to substantiate respondent's claim. However, despite the court's ruling, the lack of analysis of the issue of a judgment levy raising taxes to a constitutionally proscribed level, along with the court's dismissal of further analysis with the statement that Michigan law cannot prevent the enforcement of the federal court's judgment, leads us to believe that *Detroit* should be of little persuasive value in this matter.

Finally, respondent points to *Hammond v Place*, 116 Mich 628, 632; 74 NW 1002 (1898), a case in which a predecessor statute to § 6093, 3 How Stat 8218, provided that judgments rendered against municipalities should be assessed by the assessing officers upon its taxable property and added to other municipal taxes despite the limitations to taxation established by municipal charters. Respondent contends that, in light of the holding in *Hammond*, it would be absurd to conclude that before the 1978 ratification of the Headlee Amendment, a city was permitted to assess a judgment tax levy at a rate in excess of the limits set forth in the city charter but that after the adoption of the Headlee Amendment a city cannot assess an identical judgment tax levy. In making the above contention, and in interpreting the 1898 *Hammond* decision in light of the 1978 Headlee Amendment of the Michigan Constitution, respondent

ignores the significance of the Headlee Amendment and the intent of its drafters. The drafters' notes state:

> "Rate authorized by law or charter" was selected rather than "rate existing at time of ratification" (the spread rate) because the drafters' intent was not to penalize the taxing authorities that were efficient enough to operate at less than their maximum authorized levels or who may have reduced millage due to some unusual circumstances below the authorized level. Furthermore, it was recognized that those maximum rates had been previously approved by voters and therefore such an approach is consistent with the intent of the amendment. ·
>
> To reiterate, it was the clear and absolute intention of the drafters to require that all property and local taxation be under direct voter control. [Drafters' Notes, *supra*, 16-17.]

Petitioner argues that, in light of the strong public policy considerations inherent in the ratification of the Headlee Amendment, respondent should not be heard to contend that the constitutional language "authorized by law or charter when this section is ratified," permits an increase in the total tax rate to a constitutionally proscribed taxation level through the imposition of the judgment tax levy pursuant to § 6093. Indeed, the Michigan Supreme Court has held that the Revised Judicature Act, of which § 6093 is a part, was enacted "to effect procedural improvements, not advance social, industrial or commercial policy in substantive areas." *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146, 151; 200 NW2d 70 (1972). Petitioner points out that while § 6093(1) outlines the procedure for levying a judgment tax, it does not give specific statutory authority to supersede existing taxation levels. Section 6093(1) simply states that when a judgment is recovered against a city, and a certified transcript of the judg-

ment is presented, the assessing officer "shall proceed to assess the amount thereof" upon the next tax roll, adding the total amount of the judgment to the other city taxes and assessing it in the same column with the general city tax.

In *Morley Bros v Carrollton Twp Supervisor*, 312 Mich 607, 615-616; 20 NW2d 743 (1945), the Michigan Supreme Court addressed the issue of how a municipality must proceed when it is required to levy an ad valorem property tax to satisfy a judgment entered against it, when such levy will result in a total tax rate that exceeds the maximum rate permitted. The Michigan Supreme Court held that although there was some difficulty in reconciling the statute requiring that the amount of a judgment must be assessed on the next tax roll with subsequent legislation enacted as the result of the adoption of the fifteen-mill tax limitation under Const 1908, art 10, § 21, construing the acts together mandated that while the township could not avoid inclusion of a judgment in its budget in order to avoid payment, nevertheless, the county tax allocation board, to satisfy a judgment, must reduce other budgeted amounts so that the resulting tax rate falls within the fifteen-mill limitation. As in *Morley Bros*, in this case, where no exception to the Headlee Amendment provisions exists, the City of Hamtramck must find a way to reduce other budgeted amounts in order to satisfy the judgment.

Turning to the City of Hamtramck's charter taxation limitations as mandated by MCL 117.5; MSA 5.2084, the home rule cities act, the second of the potential restrictions on the power of the city to levy this judgment tax levy under § 6093, respondent contends that the language of its charter that limits the rate of taxa-

tion further provides that the total tax rate shall not exceed the rate limit "except as provided by law." Respondent thereby claims that its tax levy did not violate the home rule cities act or the city charter because the Legislature had specifically authorized higher rates under § 6093.

To substantiate its claim, respondent points to several cases. First, respondent cites *Simonton v Pontiac*, 268 Mich 11, 15-16; 255 NW 608 (1934), which respondent states resolved the same issue as presented here under the predecessor statute to § 6093 and similar city charter restraints. The Michigan Supreme Court in *Simonton* held that the then applicable judgment levy provided for the payment of judgments, " 'exclusive of the limitations to taxation established by municipal charters.' " *Id.*, 21, quoting *Hammond v Place, supra*, 632.

Respondent also points to *Hazel Park v Municipal Finance Comm*, 317 Mich 582, 599; 27 NW2d 106 (1947), wherein the Michigan Supreme Court held that a separate statute that required the assessment of certain millage was not limited by the eighteen-mill city charter maximum millage limit. The Court specifically stated:

> Under such circumstances the charter limit of 1.8 per cent. does not control, inasmuch as every municipal charter is subject to the Constitution and general laws of this State. The municipal finance act [1943 PA 202, as amended by 1995 PA 300, MCL 131.1 *et seq.*; MSA 5.3188(45a) *et seq.*] is a general law of the State, and applies here. [*Id.*]

In reviewing these cases, it is important to note that respondent has overlooked the fact that the language of Const 1908, art 8, § 21, in effect at the time

of these cases, expressly provided that all city charters were subject to legislative change. In *Simonton*, the Legislature established that under the statute in question, no limitation contained in any charter would prevent a tax levy. *Simonton, supra,* 19. At the time of the decision in *Hazel Park,* the Municipal Finance Act provided that "no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required to pay the bond issue which has been approved by the electors of Hazel Park and the municipal finance commission." *Hazel Park, supra,* 599; see MCL 137.1a; MSA 5.3188(45a), before its amendment by 1979 PA 190. Unlike these cases, § 6093 does not contain the legislative edict that no limitation in any charter shall have any force or effect. Instead, the Headlee Amendment has made it quite clear that the Legislature no longer has the power to tax at will or to change city charters. Drafters' Notes, *supra,* 2-3. Therefore, these cases cannot be considered to be valid precedent for the claim that an increase in the taxation rate, as established by the City of Hamtramck's charter and the home rule cities act, has been "otherwise provided by the Legislature" through the enactment of § 6093.

For the above reasons, we conclude that the Tax Tribunal did not err in finding that the City of Hamtramck had violated the Michigan Constitution, the home rule cities act, and the City of Hamtramck's charter by levying a judgment tax in excess of constitutional, statutory, and charter limitations without voter approval.

Affirmed. Petitioner may tax costs.