### NATIONAL BANK OF DETROIT *v.* DEPARTMENT OF REVENUE.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NATIONAL BANK—STATE SALES TAX.

Contention that since plaintiff national bank is a Federal instrumentality the imposition of a State sales tax upon purchases and sales of tangible personal property made by it is in conflict with its Federal statutory and constitutional immunity is not discussed, where not presented on appeal (CL 1948, § 205.51 *et seq.,* as amended by PA 1949, No 272).

2. TAXATION—SALES TAX—ECONOMIC BURDEN ON CONSUMER.

It was the intent of the legislature that the economic burden of the State tax on retail sales of tangible personal property be passed on chiefly to the consumer (CL 1948, § 205.23).

3. SAME—SALES TAX—ECONOMIC BURDEN ON RETAILER.

Economically speaking, the State general sales tax is a tax on the privilege of doing a retail business in this State by virtue of the fact that the collection of such tax is in some degree an economic burden upon the retailer (CL 1948, § 205.51 *et seq.,* as amended by PA 1949, No 272).

4. SAME—SALES TAX—PRIVILEGE TAX ON RETAIL SALES.

The State general sales tax is a privilege tax imposed upon the privilege of making retail sales, measured by the gross proceeds of such sales, less deductions allowed by statute and the use tax is imposed upon the privilege of using, storing

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 812.
    51 Am Jur, Taxation § 254.
[2, 3, 4] 47 Am Jur, Sales and Use Taxes §§ 2, 14.
[5] 47 Am Jur, Sales and Use Taxes § 42.
[6] 51 Am Jur, Taxation § 408.
[7] 51 Am Jur, Taxation § 304.
[8] 27 Am Jur, Income Taxes § 109.
[9] 16 Am Jur, Declaratory Judgments § 49.
[9] Tax questions as proper subject of action for declaratory judgment. 132 ALR 1108.
[10] 16 Am Jur, Declaratory Judgments § 75.
[10] Declarations of rights or declaratory judgments. 12 ALR 52, supplemented 19 ALR 1124; 50 ALR 42; 68 ALR 110, and 87 ALR 1205.

and consuming tangible personal property brought from out of the State after it has come to rest, being intended to reach purchases not covered by the sales tax act (CL 1948, § 205.51 *et seq.*, as amended by PA 1949, No 272; § 205.91 *et seq.*).

5. SAME—SALES TAX—USE TAX.

The presence of the State use tax in the State tax system supports the proposition that retailers are used only as a conduit or means of collection from consumers of a sales tax, since the 2 acts imposing the 2 taxes intercorrelate and are complementary (CL 1948, § 205.51 *et seq.*, as amended by PA 1949, No 272; § 205.91 *et seq.*).

6. SAME—REAL TAXPAYER.

The person liable for a tax, primarily, cannot always be said to be the real taxpayer, since the real taxpayer is the one ultimately liable for the tax itself.

7. COURTS—CONSTRUCTION OF TAX STATUTES.

The determination of a State supreme court as to the incidence of a tax imposed by the State has great weight with the supreme court of the United States, when it follows logically the language of the act.

8. TAXATION—SALES TAX DEDUCTIONS—INTERNAL REVENUE ACT.

Amounts paid for sales tax by a consumer to his vendor may be deducted under the internal revenue law the same as if the tax had been imposed upon and paid by the consumer (26 USCA, § 23[c] [3]).

9. ACTION—ACTUAL CONTROVERSY—NATIONAL BANKS—STATE SALES TAX—IMMUNITY.

Whether or not national banks can assert Federal immunity from State sales and excise taxes, regardless of whether or not the legal incidence of the tax falls upon such a bank is a justiciable question determinable under the declaratory judgment act, since there is an actual controversy as to whether there is or is not immunity from the economic burden of the tax (CL 1948, § 205.51 *et seq.*, as amended by PA 1949, No 272; § 691.501 *et seq.*).

10. COSTS—PUBLIC QUESTION—NATIONAL BANKS—IMMUNITY FROM STATE SALES TAX.

No costs are allowed in suit under declaratory judgment act to determine whether or not a national bank was immune from payment of State sales tax on purchases and sales made by it of tangible personal property, a public question being

involved (CL 1948, § 205.51 *et seq.,* as amended by PA 1949, No 272; § 691.501 *et seq.*).

Appeal from Wayne; Ferguson (Frank B.), J. Submitted April 16, 1952. (Docket No. 19, Calendar No. 45,340.) Decided June 27, 1952.

Bill by National Bank of Detroit against Department of Revenue of the State of Michigan for declaration of rights relative to liability of plaintiff for sales tax. Order striking certain parts of bill not relating to plaintiff's operation of restaurant business and other sales at retail. Plaintiff appeals. Reversed and remanded.

*Dickinson, Wright, Davis, McKean & Cudlip,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

BUTZEL, J. Plaintiff, National Bank of Detroit, on behalf of itself and also of all national banking associations in Michigan, filed a petition under the declaratory judgment act (PA 1929, No 36 [CL 1948, § 691.501 *et seq.* (Stat Ann § 27.501 *et seq.*)]) for a declaration of rights as to their liability for payment of Michigan sales tax, alleging that the provisions of the Michigan sales tax act (PA 1933, No 167, as amended [CL 1948, § 205.51 *et seq.* (Stat Ann 1950 Rev § 7.521 *et seq.*)]) conflict with section 5219 of the Revised Statutes of the United States (12 USCA, § 548) as to retail purchases made by plaintiff from Michigan vendors, and to retail sales made by plaintiff to Michigan vendees. Defendant, Michigan department of revenue, is charged with the administration of the sales tax system. Prior to

July 1, 1949, it was recognized that sales of personal property at retail both to and by national banking associations were exempt from the imposition of the sales tax. However, since the sales tax act was amended by PA 1949, No 272, it has been interpreted to mean that both types of sales are subject to the tax. It is alleged, and not denied, that without paying such sales taxes, plaintiff would be unable to purchase in Michigan personal property necessary for its business; and that it is also required to collect such tax from its vendees whether in the conduct of running a restaurant for its employees or reselling personal property it acquires by foreclosure of liens or otherwise in the conduct of its business.

Plaintiff contends that it is a Federal instrumentality and that the imposition of such sales tax is in conflict with its Federal statutory and constitutional immunity. That question is not presented on this appeal so we shall not discuss it.

Defendant in a motion alleged, and the trial court found, that as plaintiff is not the taxpayer under the sales tax act, and is not the real party in interest, it is not entitled to institute an action to the extent of determining whether or not taxes could be levied on sales to it. Accordingly, an order was entered dismissing that portion of plaintiff's petition concerned with the imposition of the sales tax on sales to plaintiff by Michigan vendors. Plaintiff appeals from that order.

Provisions of the sales tax act material to the present issue are (as amended by PA 1949, No 272):

"Sec. 1. That when used in this act:

"(a) The term 'person' includes any individual firm, copartnership, joint venture, association, social club, fraternal organization, municipal or private corporation whether organized for profit or not, company, estate, trust, receiver, trustee, syndicate, the United States, State of Michigan, county, or any

other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context. * * *

"(1) The word 'taxpayer' means any person subject to any tax hereunder. * * *

"Sec. 2.   There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to 3 per cent. of the gross proceeds thereof, plus the penalty and interest when applicable as hereinafter provided, less deductions allowed in sections 4 and 4a. * * * The taxes levied hereunder shall be a personal obligation of the taxpayer. * * *

"Sec. 4.   In computing the amount of tax levied under the provisions of this act for any month, * * *

"No person subject to a tax under this act need include in the amount of his gross proceeds used for the computation of the tax any proceeds of his business derived from sales to the United States, its unincorporated agencies and instrumentalities, any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States, the American Red Cross and its chapters and branches, and the State of Michigan or its departments and institutions or any of its political subdivisions.

"Sec. 4a.   No person subject to tax under this act need include in the amount of his gross proceeds used for the computation of the tax any sales of tangible personal property [enumerating numerous exemptions not material here]. * * *

"Sec. 23.   No person engaged in the business of selling tangible personal property at retail shall advertise or hold out to the public in any manner, directly, or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this act shall be deemed to prohibit any taxpayer from reimbursing himself

by adding to his sale price any tax levied hereunder: Provided, however, That no person other than the State may enrich himself or gain any benefit from the collection or payment of such tax."

Other sections of the act, not material here, concerning the administration and collection of the tax, consistently refer in the context to the "taxpayer" as the retailer. It is alleged and not denied, however, that the economic burden of the tax is always passed on to the consumer, and that such was the intent of the legislature when formulating the sales tax act, as evidenced by section 23 thereof, *supra* (CL 1948, § 205.73, as amended by PA 1949, No 272 [Stat Ann 1950 Rev § 7.544]).

It is significant that the Michigan department of revenue has stated its understanding of the true incidence of the tax in regulation 22 of its rules and regulations, as follows:

"A taxpayer must include the sales tax as part of the selling price of tangible personal property sold by him. He is not required to state the tax as a separate item to the consumer, but he may not advertise or hold out to the public in any manner directly or indirectly that the tax is not considered as an element in the price to the consumer."

Although exemptions from the operation of the sales tax are now stated in sections 4 and 4a (CL 1948, §§ 205.54, 205.54a, as amended by PA 1949, No 272 [Stat Ann 1950 Rev §§ 7.524, 7.525]), concerning permissible deductions from gross proceeds, prior to 1949 there was a provision in section 4, subd (b), which read in part:

"As a consumer, the United States   *   *   *   shall not be liable for the payment of the tax." *

It is obvious from a reading of regulation 22 that the change in the wording of section 4 was made

---

* See CL 1948, § 205.54, prior to amendment.

merely for the purpose of clarity in the operation of the act and did not change its substantive effect.

The parties discuss at some length whether or not an actual case and controversy exists here; who is the real party in interest in the action, retailer or consumer; whether the retailer should not have been the party plaintiff; and whether or not plaintiff is entitled to seek a declaration of rights under the declaratory judgment act. The main question presented in this appeal is whether a justiciable question is presented, when the court is asked to consider the economic realities of the situation, and treat the plaintiff as the real "taxpayer" under the Michigan sales tax act, for the purposes of an action in which it claims immunity as a Federal instrumentality.

We assume that the direct *legal* incidence of the Michigan sales tax act falls upon the retailer. Indeed, no other conclusion can be reached after examining carefully the method in which the sales tax operates. It is expressly termed a tax on gross proceeds and is paid to defendant in bulk, not per transaction, by the retailer who is entitled to a discount on the amount collected and paid to defendant. The retailer is personally obligated for the payment of the tax due. However, he is authorized to collect an amount equal to the tax levied by adding it to the purchase price of his goods, and he is forbidden to hold out to the consumer that such is not being done. It is, therefore, clear that it was the intention of the legislature that the general sales tax is a tax whose economic burden falls chiefly on the consumer. That the collection of such tax from the consumer is in some degree an economic burden upon the retailer cannot be denied and it is in this sense, economically speaking, that the general sales tax is a tax on the privilege of doing a retail business in the State. It may seem paradoxical to say that the re-

tailer only is an interested party when there is properly and legally added to the sales price to the consumer the 3% sales tax on almost every purchase and this amount is remitted to the State by the retailer after the deduction of a discount.

We made this economic distinction in *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659. Therein we said, in answer to a challenge to the validity of the chain store tax (pp 676, 677, 685, 686):

"The tax is not void because it constitutes double taxation. The tax in question is a license tax,—a tax upon the privilege of operating chain stores or mercantile establishments. It is contended it constitutes double taxation because there is already imposed under the law of Michigan a sales tax based upon the amount of business done. PA 1933, No 167. The tax imposed by PA 1933, No 265 is upon the privilege to operate chain stores. *The sales tax is a tax imposed upon consumption, a tax upon commodities sold, a tax which is usually and ordinarily paid not by the person who operates the business, but by the customer who purchases and pays for merchandise.* PA 1933, No 167, § 23. (Italics added.) * * *

"The chain store tax is a franchise tax or fee imposed for the privilege of establishing, opening, maintaining or operating 2 or more stores. * * * The general sales tax is a privilege tax imposed upon the privilege of making retail sales, measured by the gross proceeds of such sales, less deductions allowed by statute."

Defendant relies on *City of Wyandotte* v. *State Board of Tax Administration,* 278 Mich 47, in which we considered the question as to whether sales to nonexempt individuals from municipally-operated utilities should be exempt from taxation. After finding that a municipality was not subject to the sales tax, we held that such sales were also exempt, saying (p 53):

"The tax is not imposed upon the consumer, but upon those 'engaged in the business of making sales at retail as hereinbefore defined,' et cetera (Section 2)."

The case refers to *C. F. Smith Co.* v. *Fitzgerald, supra,* and does not overrule it.

Subsequent Michigan cases reaffirmed the "legal incidence" doctrine, that the sales tax is a privilege tax exacted for the privilege of engaging in the business of selling tangible personal property and measured by the gross proceeds of such sales. However, none are determinative here. In *Montgomery Ward & Co.* v. *Fry,* 277 Mich 260, mail order sales in which the goods were sent from a mail order house in another State were held to be in the course of interstate commerce and beyond the taxing power of the State. In *Standard Oil Co.* v. *State of Michigan,* 283 Mich 85, it was held that the sales tax was not payable on Federal gasoline tax and that certain deductions would not be allowable on trade and quantity discounts. *City of Bay City* v. *State Board of Tax Administration,* 292 Mich 241, held that it was in the power of the State to impose the sales tax upon the operation of municipally-owned utilities when they are in the exercise of a proprietary function. In *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich 225, we held that upon conditional sales the retailer should compute the tax on the full sale price and upon recapture of property for nonpayment of instalments there is no refund or right to credit. *Howard Pore, Inc.,* v. *State Commissioner of Revenue,* 322 Mich 49 (4 ALR2d 1041), dealt with the problem of how to measure "gross proceeds" when trade-in property was involved. It must be noted that none of these cases deal with a claimed Federal immunity, nor did consumers ask for an adjudication of their rights.

Before passing on to Federal decisions on this issue, however, it is well to note the existence of the Michigan use tax, PA 1937, No 94 (CL 1948, § 205.91 *et seq.* [Stat Ann 1950 Rev § 7.555(1) *et seq.*]). This has been held to be a tax for the privilege of using, storing and consuming tangible property brought from out of the State after it has come to rest. *Goebel Brewing Co.* v. *State Board of Tax Administration,* 306 Mich 222; *Western Electric Co.* v. *Department of Revenue,* 312 Mich 582. Its intent is to reach those purchases by Michigan consumers not reached by the sales tax act. The 2 acts peculiarly intercorrelate and in some respects the latter is complementary to the former. *Kress* v. *Department of Revenue,* 322 Mich 590. The presence of a use tax in our tax system lends further support to the proposition that retailers are used only as a conduit or means of collection from consumers of a sales tax; for when that method is not effective, other and more direct collection from the consumer is accomplished by the use tax if the purchase is made out of the State. This would be obviously unnecessary if the purpose of a sales tax were merely to exact the tax from Michigan retailers and the consumer was not a party in interest.

Counsel have cited numerous authorities from United States jurisdictions possessing similar sales tax acts. The most that can be said after a study of the authorities is that the courts are divided, and that even the decisions of an individual State may vary from the time to time.

We turn to the decisions specifically involving the immunity of Federal instrumentalities from such a tax to determine what theories have been applied, and most particularly to the decisions of the United States supreme court.

In an earlier case, *Williams* v. *Riley,* 280 US 78 (50 S Ct 63, 74 L ed 175), it was held that the pur-

chaser of motor vehicle fuel cannot question the constitutionality of a tax imposed on distributors, whereby the cost to him was enhanced. The distributor was legally liable for the tax, but the entire burden of the tax was passed on to the consumer. Six justices felt that no direct injury was threatened and that the purchaser had no standing. Three justices, however, dissented. In *Carpenter* v. *Shaw,* 280 US 363 (50 S Ct 121, 74 L ed 478), decided soon thereafter, however, it was held that the characterization given to a State tax by State courts or legislatures is not binding where a Federal right is concerned and did not relieve the court from considering the real nature of the tax and its effect upon a Federal right. The court went on to hold a tax on oil royalties actually a tax on real estate of the kind forbidden in certain Federal leases. A similar situation developed in *Stahmann* v. *Vidal,* 305 US 61 (59 S Ct 41, 83 L ed 41), where the court looked into the purpose of the Bankhead cotton act* and found that it was to place a burden on the producer thereof by taxation in an attempt to restrict production even though the ginner was given the legal responsibilty for collection and payment of the tax, and that the producer could maintain an action to challenge the act.

*Colorado National Bank of Denver* v. *Bedford,* 310 US 41 (60 S Ct 800, 84 L ed 1067), involved a Colorado "service tax" which assessed a percentage tax against users of safety deposit services. The banks were required to collect such taxes in a manner similar to that existing under the Michigan sales tax act today. It was held that the collection of the tax did not impose an unconstitutional burden on a Federal instrumentality. The court said, on p 52:

---

* 48 Stat 598.—REPORTER.

"The person liable for the tax, primarily, cannot always be said to be the real taxpayer. The taxpayer is the person ultimately liable for the tax itself. The funds which were received by the State came from the assets of the user, not from those of the Federal instrumentality, the bank. The Colorado supreme court holds the user is the taxpayer. The determination of the State court as to the incidence of the tax has great weight with us, and, when it follows logically the language of the act, as here, is controlling."

*Alabama* v. *King & Boozer,* 314 US 1 (62 S Ct 43, 86 L ed 3, 140 ALR 615), held there was no immunity from paying added costs attributable to taxes on those who furnish supplies to the government and who have been granted no tax immunity even though the government by reason of the contract eventually bore the economic burden thereof, because cost-plus construction contracts had not been granted immunity by act of Congress. No question was raised as to who was the "real party in interest." That such a ruling was not intended to apply to Federal land banks was made clear by a holding in *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.,* 314 US 95 (62 S Ct 1, 86 L ed 65). Involved was the North Dakota sales tax act* which is similar to the Michigan sales tax act with the additional provision that "Retailers shall add  *  *  *  to the sales price  *  *  *  and when added  *  *  *  shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts." The North Dakota court construed the sales tax as imposed upon the purchaser. The United States supreme court accepted the construction of the North Dakota court and exempted the Federal land bank from taxes paid on materials bought in aid of its lending functions.

---

* ND Laws 1937, ch 249, § 6.—REPORTER.

*United States v. County of Allegheny,* 322 US 174 (64 S Ct 908, 88 L ed 1209)*,* and *Federal Land Bank of New Orleans v. Crosland,* 261 US 374 (43 S Ct 385, 67 L ed 703, 29 ALR 1), decisions in which it was held that the validity of the tax was not dependent upon the ultimate resting place of the economic burden of the tax, may be distinguished as both involved direct property taxes on instrumentalities of the Federal government.

The most recent decision as to the rights of the consumer claiming a Federal immunity was *Richfield Oil Corp. v. State Board of Equalization,* 329 US 69 (67 S Ct 156, 91 L ed 80). It is particularly significant because in previous cases involving privilege taxes measured by gross proceeds, the State court's interpretation of the effect of the tax was accepted. Here, however, the United States supreme court indicated that such was not the determining factor. The Richfield Oil Corporation argued that the tax was a tax on exports when placed on oil to be delivered out of the State. The California supreme court held that no question of exports was involved as the tax was levied on the retailer, who was authorized to collect the tax from the consumers, and that the tax was not laid on the consumer and not a tax on the sale or because of the sale. The question of whether the tax deprived the taxpayer of a Federal right, however, said the court, "turns not on the characterization which the State has given the tax, but upon its operation and effect."

*Carson v. Roane-Anderson Co.,* 342 US 232 (72 S Ct 257, 96 L ed 257), decided this year, held that all activities of the Atomic Energy Commission were exempt from the payment of Tennessee sales tax, by reason of a provision of the atomic energy act[*] granting such immunity. Although there appeared to be some doubt in the State court as to whether

---

[*] 60 Stat 755 (42 USCA, § 1801 *et seq.*).—Reporter.

the taxes were to be considered as levied on the retailers who sold to the AEC or the persons who bought for the use of the AEC, this question was not mentioned by the court, who evidently assumed the determination to be immaterial when a Federal right was involved as decided in the *Richfield Case, supra.*

In sections 4 and 4a of the amended sales tax law, *supra,* certain persons, institutions, and articles are exempted from the sales tax and the proceeds from such sales need not be included in the returns to the State. The query arises, assuming sales to national banks are exempt from sales tax by Federal law, is not such immunity as effective as if it were expressly included in sections 4 and 4a *supra?* We see no reason why the effect of the immunity, whether granted by Michigan statute or by the Federal law, should not be the same.

It is of interest to note that the internal revenue code permits the deduction of the amounts paid for sales tax by the consumer to his vendor, the same as if such amount constituted a tax imposed upon and paid by the consumer. 26 USCA, § 23(c) (3). It thus recognizes the legal incidence of the tax and the economic burden on the consumer, who pays the tax.

The conclusion we draw from the above review of the facts and authorities is as follows: It is a justiciable question whether or not national banks can assert Federal immunity from State sales and excise taxes, regardless of whether or not the legal incidence of the tax falls upon a national bank. The consumer bank may plead that it has been deprived of a Federal right especially when the burden of the tax falls upon it in an economic sense, and will not be deprived of a hearing as to the claimed Federal immunity.

The plaintiff calls attention to the fact that as vendee at retail it is called upon to tax, and that as

vendor and retailer of other articles, it again is asked to pay the tax, though in the latter case it may collect it from the vendees. This indicates how closely the 2 problems are involved in the instant suit and how proper it is to include them both in plaintiff's petition.

We find, therefore, that a purchaser of tangible personal property at retail within this State, claiming a Federal immunity from the provisions of the Michigan sales tax act, may invoke the jurisdiction of this Court to determine the question of the taxability of the proceeds of a retailer derived from its sales, which tax in turn is passed on under the law to the purchaser or consumer. An actual controversy does exist between the parties: Plaintiff claiming immunity from the economic burden of the tax, and defendant contending that no immunity exists.

The Michigan declaratory judgment act states at section 1:

"The court may, in cases of actual controversy, make binding declarations of rights whether any consequential relief is or could be claimed, or not, including the determination at the instance of anyone interested in the controversy, of the construction of any statute, * * * and a declaration of the rights of the parties interested."

Section 7 provides:

"This act is declared to be remedial, and is to be liberally construed and liberally administered with a view of making the courts more serviceable to the people."

It should need no further citation of authority to indicate, in view of what has been said above, that an actual controversy within the scope of the declaratory judgment act exists.

Defendant contends, and the lower court decided, that the instant suit was improper as the results of it would not be binding on the retailer-taxpayer who is not joined in this suit. The retailer, however, has no interest in this action beyond that of a mere collection agent or intermediary and will abide by the final determination of the question. We have carefully considered defendant's other contentions herein, and have found them to be without merit.

The order dismissing that portion of plaintiff's petition concerned with the imposition of the sales tax on sales to plaintiff by Michigan vendors is reversed, without costs, a public question being involved. The case is remanded for further proceedings.

DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

NORTH, C. J., did not participate in this decision.