BAILEY v MUSKEGON COUNTY BOARD OF COMMISSIONERS

Docket No. 59038. Submitted April 7, 1982, at Grand Rapids.—Decided February 8, 1983.

Plaintiffs, Elmer Bailey, doing business as the Pines Motel, and various motel and hotel operators and owners who do business in Muskegon County, brought an action in the Muskegon Circuit Court against defendants, Muskegon County Board of Commissioners and Ralph Precious, Muskegon County Controller, challenging the county's accommodations tax ordinance, its enabling act and its attendant rules and regulations. Plaintiffs sought a preliminary injunction restraining the county from levying the accommodations tax prior to a final judicial determination of its validity. The trial court, James M. Graves, Jr., J., denied the motion for a preliminary injunction and issued a judgment and order to that effect. Plaintiffs appeal from that judgment and order raising four issues: (1) whether the accommodations tax ordinance and its enabling statute violate the four percent limitation on sales taxes set forth in the state constitution, (2) whether the accommodations tax ordinance violates the amendment to the constitution popularly known as the Headlee Amendment, (3) whether the accommodations tax

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation §§ 73, 123.
[2] 68 Am Jur 2d, Sales and Use Taxes § 128.
[3] 68 Am Jur 2d, Sales and Use Taxes §§ 47, 128 et seq.
[4] 68 Am Jur 2d, Sales and Use Taxes §§ 65, 68.
[5, 18] 68 Am Jur 2d, Sales and Use Taxes § 146.
[6] 68 Am Jur 2d, Sales and Use Taxes § 173.
[7-9] 68 Am Jur 2d, Sales and Use Taxes § 53.
[10] 71 Am Jur 2d, State and Local Taxation § 93.
[11] 16 Am Jur 2d, Constitutional Law §§ 34, 38.
[12, 13] 16 Am Jur 2d, Constitutional Law §§ 44, 45.
[14] 16 Am Jur 2d, Constitutional Law § 213.
[15] 16A Am Jur 2d, Constitutional Law § 746.
    71 Am Jur 2d, State and Local Taxation § 175.
[16] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 493.
[17] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 494.

ordinance and its enabling statute violate both the federal and state constitutional guarantees of equal protection of the law, and (4) whether the accommodations tax ordinance illegally grants powers to the county which exceed or conflict with those authorized under the enabling statute. *Held:*

1. Neither the Michigan Use Tax Act nor the Muskegon County accommodations tax ordinance is subject to the limitation provision of the constitution which imposes a limit of four percent on sales taxes, therefore, the Muskegon County accommodations act is valid even though its four percent excise tax is levied in conjunction with the four percent general use tax.

2. The term "authorized by law" contained in the Headlee Amendment, Const 1963, art 9, § 31, does not require that a tax actually be levied on the date that the amendment became effective. Rather, it requires only that a local government be empowered to levy the tax on the date that the amendment was ratified, even if the local government had not exercised its authority.

3. The county accommodations tax does not violate the express provisions of the Headlee Amendment, Const 1963, art 9, § 31. The county accommodations tax was "authorized by law" at the time that the Headlee Amendment was ratified because a state statute which permitted it to be levied was in existence.

4. The actual language of the Headlee Amendment, Const 1963, art 9, § 31, and not its ballot description drawn by the State Board of Canvassers, is the law of the state. The principle that a constitutional amendment must be construed in the light of the intent of the people by whom it was adopted does not justify a construction in accordance with a ballot description at variance with the actual unambiguous amendatory language. If the language of the amendment and that of its ballot description does not convey precisely the same meaning, the discrepancy is not relevant to the construction of the plain language of the amendment itself. A discrepancy likely to mislead voters as to the intent and purpose of the amendment affects the validity of the adoption of the constitutional amendment, not its construction. Neither party to these proceedings claims the Headlee Amendment to have been illegally adopted.

5. There is no merit to plaintiffs' argument that the accommodations tax ordinance and its enabling statute violate both federal and state constitutional guarantees of equal protection of the law. The legislative scheme need only comply with a rational basis test in order to be constitutional since it does not involve a suspect classification. The tax scheme adopted by the

ordinance bears a fair and substantial relationship to the object of the ordinance.

6. The accommodations tax ordinance does not illegally grant powers to the county which exceed or conflict with those authorized under the enabling statute. Since the enabling statute does not prohibit a county from entering into a contract with a nonprofit agency, and because counties do have general authority to enter into contracts, the Muskegon County ordinance is not invalid solely because it permits such a contract. Nor is the ordinance in violation of the enabling statute because it imposes a tax on the room occupant rather than the room provider. The ordinance does not conclusively establish that the tax is on the room occupant. Rather, it merely permits the room provider to pass the tax along to room occupants. The Supreme Court has held, in a case sufficiently analogous to this case to control here, that the cost of the sales tax which, like the accommodations tax, is a tax on the business entity and not on the consumer, could be passed on to the consumer as a cost of doing business. Plaintiffs may pass on to their customers the cost of the four percent accommodations tax.

Affirmed.

1. TAXATION — CONSTITUTIONAL LAW.

The power to tax is exclusively vested in the Legislature pursuant to the constitution, however, the state is not limited to imposing only those taxes enumerated in the constitution (Const 1963, art 9, § 1).

2. CONSTITUTIONAL LAW — TAXATION — SALES TAXES.

Michigan's Constitution provides a four percent limitation on the state sales tax on a retailer's gross taxable sales of tangible personal property (Const 1963, art 9, § 8).

3. TAXATION — SALES TAXES — RETAIL SALES.

The Michigan General Sales Tax Act permits the levy of a tax on the privilege of engaging in the business of making retail sales; such tax is presently levied at a rate of four percent of the retailer's gross receipts (MCL 205.52; MSA 7.522).

4. TAXATION — SALES TAXES — "SALES AT RETAIL".

A "sale at retail" is defined in the Michigan General Sales Tax Act as a transaction by which is transferred for consideration the ownership of tangible personal property, when the transfer is made in the ordinary course of the transferor's business. (MCL 205.51[1][b]; MSA 7.521[1][b]).

5. TAXATION — SALES TAXES — BURDEN OF COLLECTION.

The burden of collecting taxes imposed pursuant to the Michigan General Sales Tax Act is imposed upon the retailer, although the tax is passed on to the purchaser at retail (MCL 205.51 *et seq.;* MSA 7.521 *et seq.*).

6. TAXATION — USE TAX — SALES TAXES.

The Michigan Use Tax Act of 1937 was intended to complement the General Sales Tax Act by imposing a tax on tangible personal property purchased out of state for use, storage, or consumption in Michigan (MCL 205.51 *et seq.,* 205.91 *et seq.;* MSA 7.521 *et seq.,* 7.555[1] *et seq.*).

7. TAXATION — USE TAX — ACCOMMODATIONS TAXES.

The use of rooms or lodging furnished by hotelkeepers or motel operators amounts to the use or consumption of a service subject to taxation under the Michigan Use Tax Act (MCL 205.93a[b]; MSA 7.555[3a][b]).

8. TAXATION — ACCOMMODATIONS TAXES — LOCAL TAXES.

A local unit of government may enact an ordinance to levy, assess and collect an excise tax from all persons engaged in the business of providing rooms for dwelling, lodging, or sleeping purposes, except in hospitals or nursing homes, to transient guests; such tax shall not exceed five percent of the total charge for accommodations subject thereto (MCL 141.861 *et seq.;* MSA 5.3194[371] *et seq.*).

9. TAXATION — EXCISE TAXES — ACCOMMODATIONS TAXES — SALES TAXES — USE TAX — CONSTITUTIONAL LAW.

A four percent excise tax imposed pursuant to a county ordinance on revenue derived from the rental of motel and hotel accommodations in the county is not subject to the constitutional provision imposing a limit of four percent on sales taxes; the Michigan Use Tax Act is likewise not subject to such constitutional provision; such accommodations tax may be held to be valid even though it is levied in conjunction with a four percent general use tax levied pursuant to the Use Tax Act since the accommodations tax does not exceed the five percent limitation on excise taxes on accommodations imposed by state statute (Const 1963, art 9, § 8; MCL 141.862, 205.51 *et seq.,* 205.91 *et seq.;* MSA 5.3194[372], 7.521 *et seq.,* 7.555[1] *et seq.*).

10. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — "AUTHORIZED BY LAW".

The term "authorized by law" contained in the amendment to the constitution popularly known as the Headlee Amendment does

not require that a tax actually be levied on the date that the Headlee Amendment became effective, rather, it requires only that a local unit of government be empowered to levy the tax on the date that the Headlee Amendment was ratified, even if the local unit of government had not exercised its authority (Const 1963, art 9, § 31).

11. CONSTITUTIONAL LAW — AMENDMENTS — ELECTIONS — STATEMENTS OF PURPOSE.

A statement of purpose must accompany every proposed amendment by petition to the state constitution; the "person authorized by law" to draft such statement is the State Board of Canvassers (Const 1963, art 12, § 2; MCL 168.474; MSA 6.1474).

12. CONSTITUTIONAL LAW — AMENDMENTS — ELECTIONS — STATEMENTS OF PURPOSE.

An election must be voided and set aside where the language employed by the State Board of Canvassers to describe the purpose of a proposed amendment to the constitution contains omissions or defects likely to mislead voters.

13. CONSTITUTIONAL LAW — AMENDMENTS — ELECTIONS — JUDICIAL CONSTRUCTION.

The actual language of an amendment to the constitution is the law of the state, not the statement of purpose drawn by the State Board of Canvassers; if the language of the amendment and its statement of purpose do not convey precisely the same meaning, the discrepancy is not relevant to the construction of the plain language of the amendment itself; a discrepancy likely to mislead voters as to the intent and purpose of the amendment affects the validity of the adoption of the constitutional amendment, not its construction.

14. CONSTITUTIONAL LAW — EQUAL PROTECTION.

A legislative scheme which does not involve a suspect classification, such as race, need only comply with a rational basis test in order to be constitutional.

15. CONSTITUTIONAL LAW — EQUAL PROTECTION — TAXATION.

A classification scheme contained in a county tax ordinance does not violate equal protection of the law where the classifications made thereunder are not invidious and bear a fair and substantial relationship to the object of the ordinance.

16. COUNTIES — CONTRACTS.

Michigan counties have been granted general power to enter into contracts (MCL 45.3; MSA 5.283).

17. COUNTIES — EXCISE TAXES — ACCOMMODATIONS TAXES — CONTRACTS — NONPROFIT AGENCIES.

The act authorizing counties to enact ordinances to levy excise taxes on persons in the business of providing lodging does not expressly prohibit a county from entering into a contract with a nonprofit agency to carry out the general purposes of the act (MCL 141.861 *et seq.;* MSA 5.3194[371] *et seq.*).

18. TAXATION — COUNTIES — ACCOMMODATIONS TAXES — COST OF DOING BUSINESS.

A county accommodations tax which imposes an excise tax on persons engaged in the business of providing rooms and which requires that motel and hotel owners and operators shall collect the tax is a tax on the business entity and not on the consumer; such tax may be passed on to the consumer as a cost of doing business.

*Scholten & Fant* (by *Gregory J. Rappleye),* for plaintiffs.

*Knudsen, Wasiura & Associates, Inc.* (by *Harry J. Knudsen),* for defendants.

Amici Curiae:

*Varnum, Riddering, Wierengo & Christenson* (by *Jon F. DeWitt,* Kent County Civil Counsel, and *Joseph J. Vogan* and *Richard W. Butler, Jr.),* for Kent County.

*Duane T. Triemstra,* Kalamazoo County Civil Counsel, for Kalamazoo County.

Before: MacKENZIE, P.J., and D. E. HOLBROOK, JR., and D. S. DeWITT,* JJ.

D. S. DeWITT, J. Plaintiffs appeal as of right from a July 16, 1981, judgment and order of the lower court denying their motion for a preliminary injunction. We affirm.

* Circuit judge, sitting on the Court of Appeals by assignment.

On February 20, 1981, the defendant Muskegon County Board of Commissioners adopted an accommodations tax ordinance pursuant to authority granted under MCL 141.861 *et seq.;* MSA 5.3194(371) *et seq.* Under this ordinance, a four percent excise tax was to be levied on the revenue derived from the rental of motel and hotel accommodations to transient guests in Muskegon County after June 1, 1981. Soon after the ordinance was enacted, the defendants county controller and the Board of Commissioners promulgated rules and regulations governing the enforcement of the accommodations tax ordinance.

Plaintiffs are various motel and hotel operators and owners who do business in Muskegon County. On May 29, 1981, they filed the present action challenging the accommodations ordinance, its enabling act and its attendant rules and regulations. Plaintiffs sought a preliminary injunction restraining the county from levying the tax prior to a final judicial determination of its validity.

On July 1, 1981, after considering oral and written arguments, the trial judge rendered a well-reasoned opinion which found no merit in plaintiffs' contentions that the accommodation ordinance; (1) violates the provisions of Const 1963, art 9, § 31, the so-called Headlee Amendment; (2) improperly permits the county to contract with a nonprofit agency; (3) improperly subjects certain hospitals and nursing homes to the tax; (4) improperly levies a tax on the occupiers of rooms; (5) violates Const 1963, art 9, § 8, which imposes a limit of four percent on sales taxes; and (6) violates equal protection of the law. The trial judge found in favor of plaintiffs on two arguments; (1) that the accommodations ordinance and its regulations authorize tax liens beyond the powers provided in its

enabling statute, MCL 141.861 *et seq.;* MSA 5.3194(371) *et seq.,* and (2) that the ordinance improperly permits the county to retain all interest and penalties for administrative and enforcement costs. The trial judge concluded that the portions of the ordinance which he found to be null and void could be severed from the remainder of the ordinance so as to preserve it. Since neither party disputes the judge's holdings as to these severed portions we do not here discuss them. The trial judge denied plaintiffs' request for a preliminary injunction based on the ordinance as interpreted. Plaintiffs now appeal, raising four issues for our consideration.

Plaintiffs first argue that the Muskegon County accommodations tax ordinance and its enabling statute violate the four percent limitation on sales taxes set forth in Const 1963, art 9, § 8.

The power to tax is exclusively vested in the Legislature pursuant to the provisions of Const 1963, art 9, § 1. However, the state is not limited to imposing only those taxes enumerated in the constitution. *Stockler v Dep't of Treasury,* 75 Mich App 640, 647; 255 NW2d 718 (1977). Prior to the adoption of the Muskegon County accommodations tax ordinance, Muskegon County motel and hotel owners and operators were subject to a four percent use tax imposed upon them by the Michigan Use Tax Act, MCL 205.91 *et seq.;* MSA 7.555(1) *et seq.* Because of the levy imposed by the challenged ordinance, Muskegon County motel and hotel owners and operators must now pay a total of eight percent tax on their annual gross receipts.

Const 1963, art 9, § 8 provides, in pertinent part, that:

"The Legislature shall not impose a sales tax on

retailers at a rate of more than 4% of their gross taxable sales of tangible personal property."

The question before us is whether the state use and the local accommodations taxes are cumulatively subject to this four percent limitation. Because the four percent limitation clearly applies to a state sales tax, it is necessary for us to determine whether both the Michigan use tax and the Muskegon County accommodations tax are sales taxes within the meaning of this provision of the constitution.

The Michigan General Sales Tax Act, MCL 205.51 *et seq.;* MSA 7.521 *et seq.,* permits the levy of a tax on the privilege of engaging in the business of making retail sales. The tax presently is levied at a rate of four percent of the retailer's gross receipts. MCL 205.52; MSA 7.522. A "sale at retail" is defined as "a transaction by which is transferred for consideration the ownership of tangible personal property, when the transfer is made in the ordinary course of the transferor's business". MCL 205.51(1)(b); MSA 7.521(1)(b). Although the tax is passed on to the purchaser at retail, the burden of collecting the tax is imposed upon the retailer. *Sims v Firestone Tire & Rubber Co,* 397 Mich 469; 245 NW2d 13 (1976).

The Michigan Use Tax Act of 1937 was intended to complement the General Sales Tax Act by imposing a tax on tangible personal property purchased out of state for use, storage, or consumption in Michigan. *National Bank of Detroit v Dep't of Revenue,* 334 Mich 132; 54 NW2d 278 (1952). Its purpose was to counteract the trend of consumers purchasing tangible personal property outside this state to avoid the three percent sales tax in effect at that time. Imposition of the use tax equalized

the competitive status of Michigan and non-Michigan merchants.

Under § 3a of the Use Tax Act, MCL 205.93a(b); MSA 7.555(3a)(b), the use of rooms or lodging furnished by hotelkeepers or motel operators amounts to the use or consumption of a service subject to taxation under the act.

The four percent Muskegon County accommodations tax is authorized under the provisions of MCL 141.861 *et seq.;* MSA 5.3194(371) *et seq.* Section 2 of this act, in pertinent part, provides that a local unit of government:

"[M]ay enact an ordinance to levy, assess, and collect an excise tax from all persons engaged in the business of providing rooms for dwelling, lodging, or sleeping purposes, except in hospitals or nursing homes, to transient guests, whether or not membership is required for the use of the accommodations. The tax imposed pursuant to this act shall be at a rate of not more than 5% of the total charge for accommodations subject to this act."

Pursuant to the authority granted under this enabling statute, the defendant Muskegon County Board of Commissioners adopted ordinance #10, the accommodations ordinance. It provides, in pertinent part:

"There is hereby levied upon and shall be collected from all persons engaged in the business of providing rooms for dwelling, lodging or sleeping purposes to transient guests, whether or not membership is required for the use of the accommodations, an excise tax equal to 4% of the total charge for accommodations."

Plaintiffs argue that the case of *Lockwood v Comm'r of Revenue,* 357 Mich 517; 98 NW2d 753 (1959), holds that the state use tax is equivalent to

the sales tax and, hence, subject to the four percent constitutional sales tax limitation. Plaintiffs contend that, under *Lockwood,* the local accommodations tax is equivalent to the state sales and general use taxes and, thus, is also subject to the four percent limitation.

Prior to 1959, the Michigan Constitution limited the imposition of a sales tax to the rate of three percent. Const 1908, art 10, § 23. At that time, both the General Sales Tax and the Use Tax Acts imposed a three percent rate of taxation. In 1959, the Legislature raised the rate of the use tax to four percent. It also amended the Use Tax Act to provide for an additional one percent tax on the use, storage, or consumption of tangible personal property on which the three percent tax had already been imposed. Thus, tangible personal property purchased outside of Michigan was taxed at the rate of four percent and tangible personal property purchased within the state was subject both to a three percent sales and a one percent use tax. The plaintiffs in *Lockwood* challenged the 1959 amendment to the Use Tax Act as unconstitutional on the ground that it exceeded the three percent constitutional limitation imposed on sales taxes.

The defendants in *Lockwood* contended that the additional one percent tax was a use tax and not a sales tax. For this reason, it was allegedly not subject to the sales tax limitation provision.

The Supreme Court found in favor of plaintiffs, holding that, despite the different label, the additional one percent tax on tangible personal property was a sales tax, not a use tax, and was subject to the three percent limitation. To reach this conclusion, the Court looked at the precise nature of the tax and how it functioned. It found that this

tax was, in substance, a sales tax and declined to be persuaded by a label. It did not hold that all use taxes are sales taxes. Nor did it hold that all use and sales taxes are to be lumped for any reason. The Court did hold that a sales tax, masquerading as a use tax, was subject to the constitutional limitation. However, the *Lockwood* Court did not address the constitutionality of the four percent use tax on tangible personal property purchased outside the state for use, storage, or consumption within Michigan. It ordered only that the state "refrain from levying, assessing or collecting the additional 1% tax". 357 Mich 560. Thus, contrary to plaintiffs' argument in this case, *Lockwood* does not stand for the proposition that the state general use tax is subject to the same constitutional limitations imposed on the state general sales tax. Rather, *Lockwood* stands for the proposition that a court must determine the true nature of the tax and not be misled by legislative legerdemain. We are persuaded, therefore, that plaintiffs have misunderstood the import of the *Lockwood* decision.

The power of the state to impose a use tax is not limited by the provisions of Const 1963, art 9, § 8. However, even if it were, we would affirm here because the Muskegon County accommodations tax is not subject to that constitutional provision. The sales tax is clearly defined as a tax on a "sale at retail" involving the transfer of ownership of tangible property. Under no stretch of the imagination, or the language, can the use of a bed in a motel be defined as a transfer of ownership in a tangible property. Moreover, the revenues raised by the accommodations tax are not used in the same fashion that revenues raised by the sales or use taxes are used. Significantly, money raised

pursuant to the accommodations tax is to be deposited in a special fund and may be used only to pay:

"(a) The cost of administration and enforcement of the ordinance.

"(b) The financing of the acquisition, construction, improvement, enlargement, repair, or maintenance of convention and entertainment facilities, including the payment of principal and interest, when due, on bonds or other evidence of indebtedness issued by the county for convention and entertainment facilities.

"(c) Current or future annual rental payable by the county to an authority authorized pursuant to state law for the purpose of acquiring, constructing, improving, enlarging, repairing, or maintaining the convention and entertainment facilities and leasing them to the county.

"(d) The promotion and encouragement of tourist and convention business in the county." MCL 141.867; MSA 5.3194(377).

On the other hand, money raised pursuant to levies under the sales or use taxes are deposited in the state general fund. A portion of the sales tax revenues are remitted to various local units of government (MCL 205.75; MSA 7.546), whereas the use tax revenues are disbursed by legislative appropriation. MCL 205.111; MSA 7.555(21).

We are convinced, therefore, that neither the Use Tax Act nor the Muskegon County ordinance is subject to the limitation provisions of Const 1963, art 9, § 8. For this reason, the Muskegon County ordinance is valid even though it is levied in conjunction with the general use tax.

Plaintiffs next argue that the accommodations tax ordinance violates Const 1963, art 9, § 31, popularly known as the Headlee Amendment. In pertinent part, that constitutional provision provides:

"Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon."

The Muskegon County tax is unconstitutional, inasmuch as it did not receive voter approval, unless it can be determined that it was "authorized by law" prior to December 22, 1978, the date on which the Headlee Amendment was ratified. Defendants contend, the trial judge found, and we agree, that the term "authorized by law" does not require that a tax actually be levied on the date that the Headlee Amendment became effective. Rather, it requires only that a local government be *empowered* to levy the tax on the date that the Headlee Amendment was ratified, even if the local government had not exercised its authority.

The drafters of the Headlee Amendment expressly intended that a local unit of government be permitted to levy a tax it was empowered to levy on the date that the Headlee Amendment was ratified without a vote of its electors:

"[T]he intent of the wording was to permit Local units to retain those taxing powers they had by state law or local charter prior to the effective date of the amendment. Thus, a Local unit that was not levying or imposing the full amount of its taxing authority at the time of the effective date of the amendment would continue to be able to exercise such power after the effective date of the amendment. For example, a city with a 20 mill limit in its charter that only levied 15 mills in 1978 could increase its millage rate up to its 20 mill charter level without again going to the voters for approval. Likewise, a school district that had voter approval to levy extra voted millage at the time of

adoption could increase its millage rate up to the amount authorized without again seeking voter approval, even though the maximum millage authorized might not have been levied in 1978." William H. Shakers, Drafters' Notes—Tax Limitation Amendment (Taxpayers United Research Institute, February 15, 1979), pp 11-12.

While it is clear that the Muskegon County accommodations tax does not violate the express provisions of the Headlee Amendment, when the constitutional provisions, which later became known as the Headlee Amendment, were originally placed before the voters as "Proposal E", voters were presented with the following ballot description:

"PROPOSAL FOR TAX LIMITATION.
"*The Proposed Amendment Would:*
"1. Limit all state taxes and revenues, excepting federal aid, to its current proportion of total state personal income and to provide for exception for declared emergency.
"2. Prohibit local government *from adding new or increasing existing taxes* without voter approval.
"3. Prohibit the state from adopting new or expanding present local programs without full state funding.
"4. Prohibit the state from reducing existing level of aid to local governments, taken as a group.
"5. Require voter approval of certain bonded indebtedness." (Emphasis added.)

Plaintiffs contend that, on the basis of this ballot description, it may be inferred that voters intended to prohibit local governments from adopting any new taxes without their express approval. The language of the ballot description, indicating that the Headlee Amendment would prohibit local governments from adding any new, or increasing

any existing, taxes without voter approval does not plainly distinguish between those taxes that were authorized by statute at the time of the adoption of the Headlee Amendment and those taxes that were authorized *and levied* at the time that the amendment was ratified. If this language is taken to mean that local governments were prohibited from adding any new taxes not authorized by law, or increasing any existing taxes above the maximum limit permitted by existing law without voter approval, then the ballot description would have sufficiently described the proposed amendment. However, if the language of the ballot description was meant to convey the idea that local units of government could not enact any new taxes even if previously authorized by law, or increase existing taxes up to the authorized maximum limit without voter approval, then the ballot description does not adequately reflect the language of the Headlee Amendment or the intent of its drafters.

In accordance with Const 1963, art 12, § 2, a ballot description must accompany every proposed amendment by petition to the constitution of this state:

"The ballot to be used in such election shall contain a statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption. Such statement of purpose and caption shall be prepared by the person authorized by law, and shall consist of a true and impartial statement of the purpose of the amendment in such language as shall create no prejudice for or against the proposed amendment."

The "person authorized by law" to draft the statement of purpose behind a ballot proposal is the State Board of Canvassers. MCL 168.474; MSA 6.1474. Where the language employed by the State

Board of Canvassers to describe the purpose of a proposed amendment to the constitution contains omissions or defects likely to mislead voters, the election must be voided and set aside. *Jackson v Comm'r of Revenue,* 316 Mich 694; 26 NW2d 569 (1947). See also *West Shore Community College v Manistee County Bd of Comm'rs,* 389 Mich 287; 205 NW2d 441 (1973).

The Muskegon County accommodations tax was "authorized by law" at the time that the Headlee Amendment was ratified because a state statute which permitted it to be levied was in existence. It is the actual language of the amendment, and not its ballot description drawn by the State Board of Canvassers, which is the law of the state. The principle that a constitutional amendment must be construed in the light of the intent of the people by whom it was adopted does not justify a construction in accordance with a ballot description at variance with the actual unambiguous amendatory language. If the language of the amendment and that of its ballot description does not convey precisely the same meaning, the discrepancy is not relevant to the construction of the plain language of the amendment itself. A discrepancy likely to mislead voters as to the intent and purpose of the amendment affects the validity of the adoption of the constitutional amendment, not its construction. Neither party to these proceedings claims the Headlee Amendment to have been illegally adopted. The issue was not briefed or addressed either in the circuit court or here on appeal.

We find no merit to plaintiffs' argument that the accommodations tax ordinance and its enabling statute violate both federal and state constitutional guarantees of equal protection of the law. A legislative scheme that does not involve a suspect

classification, such as race, need only comply with a rational basis test in order to be constitutional. *Allied Stores of Ohio, Inc v Bowers,* 358 US 522; 79 S Ct 437; 3 L Ed 2d 480 (1959).

In the instant case, plaintiffs contend that the accommodations tax ordinance violates equal protection because it failed to impose a tax on other businesses which will benefit from the increased convention and tourist trade generated by the accommodations tax revenues. The trial judge found that the tax scheme adopted by the ordinance bears a "fair and substantial relationship to the object" of the ordinance. We concur.

Tax revenues expended to promote tourism and conventions bear a substantial relationship to the motel and hotel industries in Muskegon County. Moreover, the exclusion from the taxation classification of other businesses likely to benefit from increased tourism and convention business, such as restaurants, campgrounds, and retail stores, is not invidious because a substantial portion of their business is derived from local residents. The motel and hotel industry derives a far greater portion of its income from tourism and conventions. Therefore, the classifications scheme adopted in the accommodations tax ordinance violates neither the state nor the federal Equal Protection Clauses.

Similarly, we reject plaintiffs' contention that the accommodations tax ordinance illegally grants powers to the county which exceed or conflict with those authorized under the enabling statute. Specifically, plaintiffs contend that the ordinance permits the county to contract with a nonprofit agency to carry out the provisions of the ordinance and that it permits the room providers to pass the tax on to room occupants.

The enabling statute for the accommodations

tax ordinance provides that revenues must be "deposited in a special fund to be used by the county or by an authority which is organized pursuant to state law" only to pay certain costs. MCL 141.867; MSA 5.3194(377). The narrow issue before us, then, is whether by contracting with a nonprofit agency Muskegon County will use the money in a manner inconsistent with, or prohibited by, the enabling statute.

The statute does not expressly prohibit a county from entering into a contract with a nonprofit agency to carry out the general purposes of the act. The only express limitation imposed on local governments concerns the costs that may be paid by the revenues derived from the accommodations tax. MCL 141.867; MSA 5.3194(377). Michigan counties have been granted general power to enter into contracts. MCL 45.3; MSA 5.283. Therefore, because the enabling statute does not prohibit a county from entering into a contract with a nonprofit agency, and because counties do have general authority to enter into contracts, the Muskegon County ordinance is not invalid solely because it permits such a contract. This is not to say that the contract itself may not be invalid if, for example, it violates a specific provision of the enabling statute, such as that limiting the costs that may be paid from revenues derived from the tax. There is nothing in the record at this time that establishes such an invalidity.

Nor is the accommodations tax ordinance in violation of the enabling statute because it imposes a four percent tax on the room occupant rather than the room provider. MCL 141.862; MSA 5.3194(372) specifically states that a county is authorized to impose a tax on "persons engaged in the business of providing rooms". Pursuant to § 4

of the accommodations tax ordinance, motel and hotel owners and operators "shall collect the tax". Contrary to the argument of plaintiffs, however, § 4 of the ordinance does not conclusively establish that the tax is on the room occupant. Rather, in § 3a of the accommodations tax ordinance it is clearly stated:

"There is hereby levied upon and shall be collected from all persons engaged in the business of providing rooms for dwelling or lodging or sleeping purposes to transient guests, whether or not membership is required for the use of the accommodations, an excise tax equal to 4 percent of the total charge for accommodations."

Interpreting § 3a and § 4 in conjunction, § 4 merely permits motel and hotel owners and operators to pass the tax along to room occupants. In *Sims v Firestone, supra,* the Supreme Court held that the cost of the sales tax which, like the accommodations tax, is a tax on the business entity and not on the consumer, could be passed on to the consumer as a cost of doing business. The situation in the *Sims* case is sufficiently analogous to the present one to control here. It is apparent that plaintiffs may pass on to their customers the cost of the four percent accommodations tax.

Affirmed.