FAHNENSTIEL v CITY OF SAGINAW

Docket No. 79054. Submitted February 14, 1985, at Lansing.—Decided
April 15, 1985. Leave to appeal denied, 422 Mich 976.

On December 22, 1978, the date the so-called Headlee Amend-
ment to the Michigan Constitution took effect, the charter of
the City of Saginaw provided for a maximum tax rate for the
City of Saginaw of ten mills. In 1979, the city charter was
amended, reducing the maximum tax rate to 7.5 mills and
providing that the maximum tax rate in future years would be
the tax rate which provided the same total real and personal
property tax revenues as would the 7.5 mill rate in 1979. The
levied tax rate dropped from 7.5 mills in 1979 to 6.2 mills in
1982; however, the levied tax rate rose to 6.38 mills in 1983
and then to 6.67 mills in 1984. In 1984, James A. Fahnenstiel
and other City of Saginaw taxpayers brought an action in
Saginaw Circuit Court against the City of Saginaw, seeking to
enjoin the city from imposing the 6.67 mill tax rate, contending
that a tax rate in excess of 6.2 mills was violative of the
provisions of the Headlee Amendment. The city moved for
summary judgment. The circuit court, Robert S. Gilbert, J.,
granted the motion, finding that the phrase "that rate autho-
rized by law or charter when this section is ratified" as used in
the Headlee Amendment referred to the maximum tax rate
that was authorized on the date the Headlee Amendment was
ratified, that the maximum rate for City of Saginaw taxes on
that date was ten mills and that, since the 6.67 mill rate sought
to be imposed in fiscal year 1984-85 was less than the ten mill
rate in effect on the date the Headlee Amendment was ratified,
there was no violation of the provisions of the Headlee Amend-
ment. Plaintiffs appealed. *Held:*

While the term "when" may under certain circumstances
mean "after" or "at any time after", that term as used in the
Headlee Amendment clearly was intended to mean the date
upon which that amendment was ratified and took effect. Since
on the date of ratification of the amendment, December 22,

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 26 *et seq.*

[2] 16 Am Jur 2d, Constitutional Law §§ 62, 116.

[2, 3] 71 Am Jur 2d, State and Local Taxation §§ 141-143.

1978, the City of Saginaw Charter provided that the maximum tax rate was ten mills, the Headlee Amendment provisions are not applicable to the present circumstances since the levied tax rate is well under ten mills. The trial court properly granted the motion for summary judgment.

Affirmed.

1. PLEADING — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM.

   A motion for summary judgment on the grounds that the opposing party failed to state a claim upon which relief can be granted tests the legal sufficiency of the claim; relief on that ground can be granted only if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. WORDS AND PHRASES — "WHEN RATIFIED" — CONSTITUTIONAL LAW — HEADLEE AMENDMENT.

   The phrase "that rate authorized by law or charter when this section is ratified" as used in the constitutional tax limitation provision popularly known as the Headlee Amendment refers to the maximum tax rate that was authorized on December 22, 1978, the date on which that amendment was ratified and took effect; in the context of the Headlee Amendment, the term "when" does not mean at any time after the ratification of the amendment (Const 1963, art 9, § 31).

3. CONSTITUTIONAL LAW — HEADLEE AMENDMENT — PUBLIC POLICY.

   Interpreting the so-called Headlee Amendment to mean that any tax rate reduction would create a new maximum tax rate which could not be exceeded without a vote of the people would be contrary to public policy in that it would inhibit government bodies from imposing lower tax rates because of the fear that a new maximum rate would thus be imposed (Const 1963, art 9, § 31).

*Allan C. Schmid,* for plaintiffs.

*Otto W. Brandt,* City Attorney, for defendant.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and E. M. THOMAS,* JJ.

ALLEN, J. This appeal as of right from the trial

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

court's June 12, 1984, entry of summary judgment
in favor of defendant City of Saginaw concerns the
Headlee Amendment, Const 1963, art 9, § 31. At
the June 8, 1984, hearing on defendant's motion
for summary judgment the trial court found that
plaintiffs had failed to state a claim upon which
relief could be granted and, therefore, granted
defendant's motion pursuant to GCR 1963,
117.2(1).

On December 22, 1978, the day on which the
Headlee Amendment became effective, the maxi-
mum millage rate of the City of Saginaw was ten
mills as provided by § 45 of the city charter. In
1979 the charter was amended by a vote of the
people to reduce the maximum authorized millage
to 7.5 mills, with additional reductions depending
upon possible changes in the assessed value of real
and personal property. The amendment read in
relevant part:

"The maximum millage rate provided herein shall be
permanently reduced to yield the same gross dollar
revenue as the fiscal 1978-79 property tax revenue
yield."

Pursuant to the above charter provision and the
gradual increase in property values in the city
between 1979 and 1982, the millage rate was
reduced to 6.2 mills in 1982. However, in May,
1984 the city council levied 6.67 mills for operat-
ing expenses for fiscal year 1984-1985. This was
done without a vote of the people.

In response to the city's action, plaintiffs, who
are all property owners in the City of Saginaw,
filed a complaint seeking to enjoin the city from
levying 6.67 mills, contending the levy violated the
Headlee Amendment since, according to plaintiffs,
the lowering of the millage rate in 1982 estab-

lished 6.2 mills as the maximum legal millage rate under the amendment. In plaintiffs' view, since the 6.67 mills exceeded the millage rate of 6.2 mills which had been levied in 1982 and the increased millage was being levied without a vote of the people, the city's action was in violation of the Headlee Amendment.

Subsequent to plaintiffs' filing of their complaint, defendant made a motion for summary judgment pursuant to GCR 1963, 117.2(1). The trial court granted defendant's motion after it determined that, for purposes of the Headlee Amendment, the city's maximum authorized millage rate was ten mills since, according to the court, that was the rate that was in effect on December 22, 1978, when the Headlee Amendment was ratified and hence, according to the court, that was the rate that was frozen as the maximum rate under the amendment.

A motion under GCR 1963, 117.2(1) tests the legal sufficiency of a plaintiff's claim. In general, a plaintiff has failed to state a claim upon which relief can be granted if his claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Crowther v Ross Chemical & Mfg Co*, 42 Mich App 426, 429; 202 NW2d 577 (1972). In pertinent part, Const 1963, art 9, § 31, popularly known as the Headlee Amendment, provides:

"Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax *above that rate authorized by law or charter when this section is ratified,* without the approval of a majority of the qualified electors of that unit of Local Government voting thereon." (Emphasis supplied.)

Plaintiffs argue that in the above provision the language "when this section is ratified" should be interpreted to mean at the time the Headlee Amendment was ratified or at any time after the amendment was ratified, so that in the case at bar when the millage rate in the City of Saginaw was lowered to 6.2 in 1982 that rate became the maximum rate authorized by law, replacing the ten mill rate that was in effect on December 22, 1978, the day on which the Headlee Amendment became effective. Specifically, plaintiffs argue that the word "when" has no fixed meaning, is but an adverb of time, and may even mean "after", *Toy ex rel Elliott v Voelker,* 273 Mich 205; 262 NW 881 (1935), or "at any time after", *Kirtz v Peck,* 113 NY 222; 21 NE 130 (1889). Further, plaintiffs rely on the following language contained in the ballot description "Proposal E" when the Headlee Amendment was placed before the people:

"PROPOSAL FOR TAX LIMITATION.
"The Proposed Amendment Would:

\* \* \*

"2. Prohibit local government from adding new or increasing existing taxes without voter approval."

Defendant concedes that the term "when" has several meanings depending upon the language which accompanies the term, but argues that the language in the instant case, "when this section is ratified", specifically means the day and month on which the section was ratified, namely, December 22, 1978. The question raised is of first impression. However, the interpretations of the Headlee Amendment in two cases and an opinion of the Attorney General on a related question lead to the conclusion that defendant and the trial court correctly interpreted art 9, § 31.

In *Bailey v Muskegon County Bd of Comm'rs,* 122 Mich App 808; 333 NW2d 144 (1983), plaintiff hotel and motel operators contended that a four percent excise tax on rental of motel and hotel accommodations enacted by the county board violated the Headlee Amendment because it was enacted after the date on which the Headlee Amendment was ratified. Our Court held that the tax was legal because the language "authorized by law or charter when this section is ratified" required only that the governing body be empowered to levy the tax on the date that the Headlee Amendment was ratified. In so doing, the Court stated that the language of the amendment itself rather than the language in Proposal E controls.

"The Muskegon County accommodations tax was authorized by law at the time that the Headlee Amendment was ratified because a state statute which permitted it to be levied was in existence. It is the actual language of the amendment, and not its ballot description drawn by the State Board of Canvassers, which is the law of the state. The principle that a constitutional amendment must be construed in the light of the intent of the people by whom it was adopted does not justify a construction in accordance with a ballot description at variance with the actual unambiguous amendatory language. If the language of the amendment and that of its ballot description does not convey precisely the same meaning, the discrepancy is not relevant to the construction of the plain language of the amendment itself." 122 Mich App 824.

In OAG, 1979-1980, No. 5562, p 389, 390 (September 17, 1979), the Attorney General responded to an inquiry from the Michigan Senate as to the meaning of the term "maximum authorized rate" in the Headlee Amendment, as follows:

"It is my opinion that the term 'maximum authorized

rate' refers to 'that rate authorized by law *or charter when this section is ratified';* it consists of the basic 15 mills which may be levied without voter approval, any tax voted by the electors, and any tax authorized in a charter adopted by the qualified electors and may exceed the amount being levied when the section was ratified. Thus, where a city, village or charter authority has levied a property tax rate *below the rate authorized by their charters, the tax rate permitted by their charters constitutes the maximum authorized rate."* (Emphasis supplied.)

Similarly, the Michigan Tax Tribunal has ruled that a county may properly grant its townships a 0.5 mill increase over a preceding year without a vote of the people providing it does so within the 15 mill total allocation, without violating the Headlee Amendment. *Livingston Intermediate Schools v Livingston County Tax Allocation Bd* (MTT Docket No. 38922, *released* September 12, 1979).

Based upon these interpretations of the Headlee Amendment, we conclude that the trial court properly ruled that the City of Saginaw was entitled to summary judgment pursuant to GCR 1963, 117.2(1) due to the fact that the city charter authorized a maximum rate of ten mills on December 22, 1978.

Further, public policy supports the conclusion that a local unit of government may raise its tax rate without a vote of the people providing the rate so raised does not exceed the maximum rate permitted on the date the Headlee Amendment became effective. If the "maximum rate authorized by law" were lowered every time a municipality decided to reduce its millage rate, the purpose of the Headlee Amendment would be chilled since government officials would hesitate to impose a lower tax rate for fear that the lower rate would

establish a new ceiling and, if the economy turned downward, municipal services could not be maintained.

Affirmed. No costs, a question of public importance being involved.